UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY

In re:   Choates G. Contracting, LLC

                    Debtor.

Case No.  21-  13085-ABA

Hon.  Andrew B. Altenburg, Jr.,

Chapter 11 (Subchapter V Small Business)

**CREDITORS PHILLY PROPERTIES GP, LLC AND DREXEL PROPERTIES GP, LLC'S OBJECTIONS TO DEBTORS PLAN OF REORGANIZATION**

Creditors Philly Properties GP, LLC ("Philly Properties") and Drexel Properties GP, LLC ("Drexel Properties" and collectively with Philly Properties, the "Objecting Creditors") by and through their undersigned counsel, Silverang, Rosenzweig & Haltzman, LLC, hereby object to Debtor Choates G. Contracting, LLC's ("Debtor") proposed First Amended Plan of Reorganization (the "Plan").  As more fully set forth below, the Plan cannot be confirmed because (1) it is not feasible, and (2) it has not been proposed in good faith.

Alternatively, the Plan should not be confirmed because, even giving due consideration to the relaxed requirements of Subchapter V, the Plan does not provide sufficient disclosures to allow the Objecting Creditors to reasonably assess the potential viability of the Plan.

**RELEVANT FACTS/PROCEDURAL HISTORY**

Debtor filed its petition on April 15, 2021.  *Doc. 1*. In its Petition, at Question 10, Debtor contends that there are no affiliates presently in bankruptcy. *Doc. 1 at item 10*.  This contention is knowingly false.  Debtor and Choates General Contracting, Inc. (the "Original CGC") are both wholly owned by Darrel Choates, Sr. ("Mr. Choates"), and thus are affiliates.  The Original CGC

remains a debtor in a bankruptcy pending before this Court at docket no. 18-26699-JNP.  A true and correct copy of a recent docket report from that matter is attached hereto as Exhibit 1.

In fact, the Debtor is the *de facto* successor to the Original CGC, and appears to have been formed when the Original CGC was on the verge of bankruptcy, and upon information and belief, in order to allow Mr. Choates to attempt to continue with his business while separately unwinding the Original CGC and/or to evade the Original CGC's creditors. For example, the Original CGC and Debtor operate a virtually identical business, and the Debtor regularly refers to itself as Choates General Contracting, including using both the Debtor's name and the Original CGC's name on individual documents.  *See e.g.* Exhibits 2, 3, and 4 hereto.  In fact, long after the Original CGC's bankruptcy had been converted to a Chapter 7, its purported COO was still signing his emails as a representative of the Original CGC, rather than Debtor, while other representatives of the Debtor also issued communications in the name of the Original CGC (or continued to use both names interchangeably).  See Exhibit 4 and 5.  In the Original CGC bankruptcy filings, it indicated that its principal place of business was 120 Peace Lane, Glassboro, NJ, which is a parcel of residential real property that, upon information and belief, was Mr. Choates' former primary residence, and which the Debtor now contends it is a party to a lease purchase agreement to acquire the same.  *See e.g.* Exhibit 6, a complaint filed by Mr. Choates in November 2017.  In the various litigations against Debtor brought by Objecting Defendants, Debtor even sought to escape liability for the fraud committed against the Objecting Defendants by claiming they had actually contracted with the Original CGC, not the Debtor, despite such contract being formed *after* the Original CGC's bankruptcy was converted to a Chapter 7.  As an additional example, the Danton Lane[1] home that is one of the primary reasons

---

[1] The Original CGC valued this home at $600,000.00 in its schedules.

the Plan has not been proposed in good faith was initially listed as an asset of the Original CGC

in it schedule A/B, however, for reasons which are unclear, this asset and several other parcels of

real property were omitted from the Original CGC's Amended Schedules.  That property is now

identified by Debtor as one of its assets.

As here, the Original CGC's bankruptcy commenced as a Small Business Chapter 11

bankruptcy, but was quickly converted to a Chapter 7.[2]  Exhibit 1

All of the Debtor's other contentions in its Plan must be viewed in light of this

intentionally omitted, but highly germane history.

As set forth in the Plan, the Debtor contends that it was formed "on or about February 21,

2018," (shortly before the Original CGC sought bankruptcy protection) and is a "certified

minority owned Real Estate Construction Company," that "coordinates and performs

construction services."  *Doc. 50 at p. 6, §§ 1.1 and 1.2.*  The Debtor further contends that it owns

"numerous pieces of real estate which were acquired for the purpose of holding and renting."  *Id.*

A review of the Debtor's filings to date reveals, however, that Debtor's income from rental real

estate is extremely modest at $2,100.00 per month.  *See e.g. Doc. 50-4 at "Rental Revenue."*

However, because the real estate with *by far* the largest carrying costs is not actually used for this

purpose, and, in fact, is not used for any legitimate business purpose of the Debtor, but instead is

used as Mr. Choates' (lavish) personal residence, the Debtor is cash flow *negative* from

operating its real estate portfolio.  *See Doc. 50-4 (Exhibit D to the Plan)*, Debtor's one-year cash

flow projections, which indicate that, if the Plan is confirmed and until Debtor liquidates the five

(5) properties it is proposing to sell, Debtor anticipates earning $2,100.00 per month in rental

income, against $4,922.00 in mortgage/rental payments.  Such cash flow projects indicate that

---

[2] The Debtor's principal, Darrell Choates, Sr. has also sought individual bankruptcy protection
multiple times.

post liquidation, Debtor projects that it will *still* have $4,251.00 in mortgage/rental payments, all

of which thus must be attributable to Danton Lane. *Id.*

In the summary of its Plan, the Debtor indicates that it intends to "repay unsecured

creditors 100% of the amounts that they are owed[3] over a period of up to five (5) years by (a)

selling only five (5) of the six (6) parcels of real property the Debtor owns and distributing only

sixty-five percent (65%) of the net proceeds of the sale, and (b) funding the balance from future

operations. While, at first blush, this appears to have the makings of a reasonable plan, when the

details are analyzed, it becomes apparent that the Plan is not feasible and has not been proposed

in good faith, or, at worst, that the Debtor has not provided its creditors with sufficient

information to analyze the plan.

### A. Debtor's Plan to liquidate only five of its six parcels of real property has not been proposed in good faith.

In Section 1.5 of the Plan, Debtor identifies its assets by reference to <u>Exhibit A</u> thereto,

which is a list of Debtor's real property together with an identification of the debts allegedly

secured by liens against such real property. However, the values of the assets set forth on this

list are wholly unreliable, as <u>Exhibit A</u> indicates that the "basis for valuation" is *"Debtor's [lay

person] principal's* projected sales value within the next 18 months."[4] *Doc. 50-1, Exhibit A to

the Plan*. Schedule E of Debtor's Plan is its Liquidation Analysis, and which is again based

upon Debtor's wildly unreliable assessment of the value of its real property, provides a starting

point for analysis of this aspect of the plan. *Doc. 50-5*. The Liquidation analysis asserts that the

liquidation value of all of Debtor's real estate is $499,400.00 (before payment of fees and costs

of the liquidation if converted). *Id.*

---

[3] This is inaccurate as Debtor includes no interest on these debts.

[4] As an indication that Debtor is simply "shooting in the dark," the figures set forth on <u>Exhibit A</u>
are markedly different from the valuations set forth in Debtor's schedules.

However, Debtor's plan does not call for the sale of all of the real estate.  Instead, Debtor proposes retaining the Danton Lane home.  Such exclusion renders the Plan as having not been proposed in good faith.  This is because (1) this asset has *by far* the most equity ($173,300.00 by Debtors analysis!), (b) no legitimate business purpose for the Debtor, and (c) huge carrying costs (over $50,000.00 per year).  *See Doc. 50-4*, showing that even after liquidating all of Debtor's other real estate, Debtor will still have costs of $4,251.00 which can only be attributable to the Danton Lane property.

Debtor is likely to argue that this property serves a business purpose based upon its new found claims (at the 341 Creditors' Meeting) that Debtor now uses the Danton Lane home as Debtor's offices (rather than the Cherry Hill office condominium consistently identified as its principal place of business) and as a *de facto* warehouse for the storage of pre-purchased materials.  This contention is without merit.  First, the Danton Lane home is not zoned to be used as an office for a construction company, let alone as a warehouse storage yard.  Second, the notion that Debtor pre-purchases materials in bulk at the outset of a project to achieve savings is the same misrepresentation Debtor made to the Objecting Creditors resulting in the judgment in favor of Philly Properties GP, LLC and the pending claims by Drexel Properties GP, LLC.  *See e.g.* Exhibit 7.  Third, even were that not so, it would be highly atypical for a contractor to warehouse these materials, rather than either store them on the construction site, or pre-pay for them and have them delivered as needed.  Fourth, in making this claim (outside of its Plan), Debtor has made no attempt to quantify these alleged savings, or put them in context of the large monthly carrying costs for this property--$4,251.00—plus the additional transportation costs Debtor is going to incur to transport these goods from suppliers in the Philadelphia area to Mullica Hill, New Jersey or the transportation costs to then deliver them back to job sites that, if

they actually exist, appear to be in Pennsylvania (based upon testimony at the 341 Creditors' Meeting).    Likewise, Debtor has made no attempt to explain if the $4,251.00 in expenses associated with the Danton Lane home are reasonably equivalent to the cost of other more conveniently located warehousing.

Further still, in its Plan, Debtor acknowledges the true purpose of retaining Danton Lane is that Debtor's principal, Mr. Choates simply wants to retain this property as his personal home, claiming that the ability to live at the home rent free is in lieu of cash compensation for his role with the Debtor, and is valued at $50,400.00 per year.    However, Debtor has offered no explanation as to why the sole equity stakeholder in an insolvent entity that has no projects it is presently performing should be entitled to *any* compensation, let alone $50,400.00 per year in compensation, and where it would be atypical for an equity stakeholder to review compensation aside from profit distributions of which there are none.    It is important to note that the Debtor is not Mr. Choates' sole source of income.    Rather, at the 341 Creditors' Meeting, Mr. Choates acknowledged that he has full time employment, and also owns other businesses. In fact, the Plan contemplates (at Exhibit D), that Mr. Choates will contribute $3,000.00 per month into the Debtor from his other assets, but then wholly offsets that contribution (and then some) by proposing that the Debtor retain Danton Lane as *de* facto compensation to Mr. Choates at a cost of $4,251.00.    Thus, these elements of the Plan are wholly unreasonable and have not been proposed in good faith.    Rather, it would be reasonable and appropriate that as an equity stakeholder, Mr. Choates only compensate himself from the Debtor's profits in the form of distributions if and when the Debtor is profitable, rather than use his desire for compensation in the form of a lavish home to prevent a reasonable, good faith Plan from being presented.

Thus, as more fully set forth below, in refusing to sell the Danton Lane home, which serves no purpose other than to provide Debtor's principal with a lavish home and which could render the secondary component of the Plan far more likely to be feasible, the plan has not been proposed in good faith.

Excluding the Danton Lane home, Debtor projects that the sales of the remaining parcels of real property will net Debtor's Estate $326,000.00.  Of that sum, the Debtor plans to retain thirty-five percent (35%) for the payment of taxes and to fund operations, while paying over only sixty-five percent (65%), or only $211,000.00 to the Sub-Chapter V Trustee.  However, the Debtor proposes first paying professional from this sum, which estimates to be $75,000.00.  If accurate <u>only $136,900.00 will remain for distribution to Debtor's general unsecured creditors</u>.

Objecting Creditors investigation of these properties, however, suggests that even in the current "sellers" market, Debtor has significantly overvalued these properties.  Most notably, 13 Riviera Drive, Pennsville, NJ is a vacant parcel of ground the Debtor acquired in 2018 for $7,000.00, which Debtor does not appear to have done anything to improve either by way of entitlements or physical improvements as necessary to materially increase its value beyond general market appreciation.  Debtor's Plan does not indicate that Debtor has made any attempt to develop the Riviera Drive property.  Nonetheless, based solely upon Mr. Choates' lay opinion, Debtor has represented to the Court that this property is now somehow worth $110,000.00 (or 15 times what Debtor paid for it) in its as-is vacant condition.  Objecting Creditors own informal market analysis indicates that the current "as-is" value of this vacant lot is little more than its original purchase price, and thus that, given the $16,052.59 tax lien against the parcel, that there is likely <u>negative</u> equity in this parcel.  In fact, Debtor's own actions—its failure to pay real property taxes for a sufficient period of time to allow a tax lien to be sold—suggest Debtor is

well aware of the limited value of this asset, as if the asset were truly worth this much money, Debtor would never have exposed it to a tax sale.

Thus, even accepting Debtor's inflated valuations of the other parcels, when the inflated valuation of Riviera Drive is omitted (and Danton Lane is also excluded) the sale of these parcels is more likely to net only $238,700.00, resulting in only $155,155.00 being paid to the Sub-Chapter 5 Trustee, and then leaving only $80,155.00 available for distribution to Debtor's unsecured creditors from the liquidation of five (5) of the Debtor's six (6) parcels of real estate after first paying the Debtor's professional.

However, if the Danton Lane home had been included in the Plan, if the Debtor's valuations are accurate on all accounts, the $136,900.00 available for distribution would nearly double to $249,000.00 with no impact on the Debtor's ability to continue with it contracting business since this property served no legitimate business purpose.  More dramatically, if the Objecting Creditors' analysis of the Riviera Drive property (i.e. that it has negative equity) is more accurate than Debtor's, and if Danton Lane were included in the Plan, the $80,155.00 distributable under the Plan would increase nearly two and a half times to $192,800.00.

Thus, as more fully set forth below, this aspect of the Debtor's Plan both independently, and when considering in conjunction with Debtor's intent to satisfy the remainder of its debts from its currently non-existent operating income, has not been proposed in good faith.

Further still, Debtor has offered no meaningful explanation of how it determined the 65/35 split, but available indicia suggest that this apportionment is not reasonable.  First, while the sale of some of these assets would be treated as short term capital gains, many would be treated as long term.  While Debtor has not indicated what its taxable income has been on its identified gross revenues from the past few years, based upon its cash flow projections, it would

appear that these sales and Debtor's net income from operations would be taxed at a far lower rate than thirty-five percent (35%). Likewise, because Debtor indicates that it has <u>no</u> employees, based upon the nature of its business (general contracting), aside from a cash drain like Danton Lane, the Debtor should have extremely nominal operational costs unless and until it is actually proceeding with a construction project. These costs, however, would be covered by those projects. In fact, in its projections, aside from Construction Project Expenses, which Debtor will only incur if it is actually working on a construction project (which it is not currently), aside from debt service obligations on its owned real estate and rental payment obligations on its rented real estate, Debtor's projections make note of only $130.00 per month in other expenses. Thus, when these facts are taken into account, it does not appear that the split between sums retained versus those distributed to unsecured creditors has been proposed in good faith. Instead, the Plan should have called for far more of the net proceeds to be paid to the Sub-Chapter V Trustee.

However, because the Debtor's Plan makes no attempt whatsoever to perform such an analysis with any degree specificity, at worst, the Plan lacks adequate disclosures.

### B. As presently proposed, Debtor's Plan is not feasible.

Debtor proposes to satisfy the remainder of its obligations under the Plan from income generated by its operations. Debtor proposes paying $60,000.00 in the first year following confirmation, $120,000.00 in the second year, and $144,000.00 per year in each of years 3, 4, and 5 (or until the unsecured debts are paid in full). Thus, Debtor proposes to pay a maximum of $612,000.00 over the life of the Plan.

Debtor's Plan does not contain an analysis of the remaining quantum of its unsecured debts after payment of the results of the partial liquidation its real property proposed by the Plan.

The below chart attempts to provides that analysis:

| Creditor | Amount |
|---|---|
| State of NJ | $1,575.35 |
| Sunbelt Rentals | $10,734.60 |
| Philly Properties GP, LLC | $145,019.00[5] |
| Bitty Advance | $16,000.00 |
| Drexel Properties GP, LLC | $250,000.00-$904,250.[6] |
| TOTAL UNSECURED CLAIMS | $423,328.95 - $1,077,578.95 |
| Unsecured Claims After Sale Of Plan Real Estate At Debtor Valuation | $286,428.95 - $940,678.95 |
| Unsecured Claims After Sale Of Plan Real Estate Excluding Riviera Valuation | $343,173.95 - $997,423.95 |

Temporarily setting aside that Debtor's revenue projections are fantastical, the foregoing chart demonstrates that unless the Danton Lane property is liquidated, and assuming Debtor achieves anywhere near the revenues it is projecting, the Debtor would only be able to repay its unsecured creditors one hundred percent (100%) of their claims (without interest!) if the Debtor succeeds in limited Drexel Properties GP, LLC's claim significantly.  However, Debtor has made no attempt to demonstrate that this is so.  It has simply concluded this will be the case.

---

[5] Assuming the Master Street property sells at its claimed value, this figure reflects the remaining claim, assuming Philly Properties is not successful in opposing Debtor's action to deem a portion of the claim as unsecured.  If the entirety of the claim is deemed secured, the amount of unsecured claims would decrease, but so too would the sum payable to unsecured creditors from sales proceeds.

[6] The Plan notes that Drexel Properties Proof of Claim values its claim at $904,250.00, but indicates that this claim "may ultimately have a claim value of $250,000.00 to $350,000.00.

Therefore, on this basis alone, the Plan is not feasible as there is likely to be a huge gap as proposed.

More significantly, the Debtor's revenue projections do not appear to have any basis in reality.  The Debtor has not provided any meaningful explanation to support its massive projects. The Debtor and the Original CGC's operating history suggest the Debtor will never achieve the revenues necessary to do so.

In Section 3 of the Plan, Debtor states:

> 3.1. Ability to Initially Fund Plan.
>
> The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The Debtor does not project that it will need any cash on hand on the Effective Date of the Plan to play [sic] all the Claims and expenses that are entitled to be paid on that date.
>
> 3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.
>
> The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.
>
> The Debtor has provided projected financial information. Those projections are listed in EXHIBIT D and EXHIBIT F (referenced in § 2.9, above).[7]

Exhibit D, Debtor's one-year projections, was attached to the Plan.  However, in lieu of appending an actual Exhibit F, which was to have been a five-year cash flow projection,  there is merely a placeholder stating that "CASH FLOW PROJECTIONS TO BE SUPPLIED AT LATER DATE."  As of the filing of this opposition, such projections have been supplied.

In Section 1.7 of the Plan, regarding its current and historic financial conditions, Debtor states only:

---

[7] Section 2.9 of the Plan merely states that "Debtor has provided projected financial information. Those projections are listed in **Exhibit D and Exhibit F.**" ***Doc. 50*** *§ 2.9.*

As of the commencement of the case, **the Debtor had no operating projects**, **with significant projects to come during this year and the years to follow**. The Debtor is currently in the process of getting work and jobs. The Debtor *believes* that the next few years of operation will be the best years.

This believe is based on the overall general improvement in the business climate – since COVID-19 and its lockdowns and restrictions have passed, there is pent up demand for the kinds of construction projects the Debtor completes.

Current financial information may be obtained by reviewing the Debtor's monthly operating reports which have been filed with the Court every month since the case was commenced.

*Doc. 50 at § 1.7.*

Debtor's Plan does not make any attempt to identify the "significant projects to come," to set forth the status thereof, or to quantify what portions of these projects were awarded to Developer.  Rather, the Plan includes no information whatsoever to allow Objecting Creditors to assess if Debtor really has any projects in its pipeline, and, if it does, whether the projected project income and project expenses are remotely credit.  While there is one schedule to the Plan that might have included this information if it was legitimate, Exhibit C, a schedule of Executory Contracts, such exhibit does not include any construction contracts.  *Doc. 50-3.*

Further still, the notion that the COVID-19 pandemic was harmful to the construction industry is not accurate, and is not a legitimate excuse for the Debtor's significantly lower revenues in 2020 and its non-existent revenues in 2021 to date.  While the industry *briefly* slowed down when various governmental agencies issued stay at home orders, those orders were lifted with respect to the construction industry in relatively short order, and from that time period to date, the contracting business has seen its best performance in years.  *See e.g.* Exhibit 8.  Thus, Debtor's attempt to excuse its poor financial results from 2020 and 2021 to date upon the pandemic runs contrary to the performance of this industry.

Looking at Exhibit D, Debtor's one-year cash flow projections, such projections contemplate Debtor grossing nothing in April or May from construction projects, but then earning substantial revenue from construction projects for the remainder of the one-year period, for a total one-year revenue from construction projects of $4,162,906. *Doc. 50-4.* While the Debtor has used seemingly random figures to give the impression that they were not manufactured from thin air, closer examination reveals the figures are haphazard, and increase and decrease seemingly at Debtor's whim. *Id.*

These massive projections, however, must be viewed in light of Debtor's limited operating history, as well as the fact that the Original CGC filed for a Chapter 11 bankruptcy just a few years ago and is mid-liquidation. The Debtor contends that "in 2018 the Debtor had gross revenues of approximately $945,000," "in 2019…gross revenues of approximately $953,000,"[8] and "in 2020 … gross revenues of approximately $445,000." *Doc. 50 at p. 6, § 1.2; see also Doc. 19 at part 1.* Debtor's Plan fails to provide any statement regarding its gross revenues in 2021, however, in its Amended Statement of Financial Affairs, Debtors stated that through April 15, 2021, it had gross revenues of only $70,000.00. *Doc. 19 at part 1.*

Thus, the Debtor's first year projections contemplate that the Debtor's revenues in the next twelve (12) months are going to be more than four times its prior *best year ever*. Debtor makes this claim, again, without providing any data to assess the claim, and in the face of a history where Debtor's revenues have been *decreasing* over time, suggesting the business is not moving towards greater success, but, rather, is trending the direction of the Debtors affiliate, the Original CGC, failure.

---

[8] Objecting Creditors, collectively, paid Debtor more than $500,000.00 in 2019, and thus these two (2) projects represent more than half of Debtor's gross income for 2019.

<u>A review of Debtor's operating reports filed to date confirms that these figures are not</u> <u>reliable</u>.  Debtor is already dramatically behind its projections.  As per Debtor's projections, Debtor was to have grossed $140,000.00 from construction projects in June and $375,000.00 from construction projects in July.  However, Debtor's operating reports reveal that Debtor did not earn **any** revenue (i.e. **zero dollars ($0.00)**) from construction projects in June or July.  Upon information and belief, Debtor is not going to have any revenue in August either or for the foreseeable future.

Further still, comparing Debtor's projected construction project income against projected construction project expenses reveals that Debtor is proposing wildly inconsistent profit margins (between 17 and 30 percent), without offering any explanation whatsoever as to how these figures were calculated, or why the Debtor's margins on speculative projects would vary so considerably.

## ARGUMENTS

Debtor's Plan should not be confirmed as it was not proposed in good faith and is not feasible.  Alternatively, the Plan should not be confirmed as the Debtor has not made sufficient disclosures.

### A.  The Plan has not been proposed in good faith and is not feasible.

As the Third Circuit has explained:

> A court shall confirm a plan only if, inter alia, it "has been proposed in good faith and not by any means forbidden by law[,]" and if it is feasible. 11 U.S.C. §§ 1129(a)(3), (11); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 243 n.59 (3d Cir. 2004) (interpreting 11 U.S.C. § 1129(a)(11)). The debtor has the burden of proving that a disclosure statement is adequate, including showing that the plan is confirmable or that defects might be cured or involve material facts in dispute. *Accord In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996); *In re R & G Props., Inc.*, No. 08-10876, 2009 WL 2043873, at *5 (Bankr. D. Vt. July 6, 2009).

*In re Am. Capital Equip., LLC*, 688 F.3d 145, 155-57 (3d Cir. 2012).

      **i.**      **The Plan is not feasible**.

A plan will only be found to be feasible the Debtor has demonstrated that"[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012); 11 U.S.C. § 1129(a)(11).

As the Third Circuit has explained, "[a]lthough § 1129(a)(11) does not require a plan's success to be guaranteed the plan must nevertheless  propose a realistic and workable framework. In other words, the plan must be reasonably likely to succeed on its own terms without a need for further reorganization on the debtor's part." *Id.* at 156-157 (internal citations/quotations omitted)

Feasibility, contemplates "the probability of actual performance  of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Matter of Bergman*, 585 F.2d 1171 (2d Cir. 1978)); *see also In re Walker*, 165 B.R. 994, 1004 (E.D. Va. 1994). The purpose of the chapter 11 feasibility requirement is to prevent  confirmation of "visionary schemes." *See Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985); *7 Collier on Bankruptcy*, P 1129.02[11] (16th ed. 2009). Although section 1129(a)(11) does not require that compliance with proposed plan terms be guaranteed, there must be a "reasonable prospect of success" and the plan must be "workable." *7 Collier on Bankruptcy*, P 1129.02[11] (16th ed. 2009); see, e.g., *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985); *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *Corestates Bank*,

*N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33, 45 (E.D. Pa. 1996); *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 366 (E.D. Pa. 1996); *In re S. Canaan Cellular Invs.*, 427 B.R. 44, 60-61 (Bankr. E.D. Pa. 2010).

In assessing viability, a bankruptcy judge must undertake a complex evaluation of available data concerning the past, present, and proposed future operations of the debtor. *In re Potter Material Serv., Inc.*, 781 F.2d 99, 104 (7th Cir. 1986) "The feasibility requirement mandates that the plan proponent **offer concrete evidence** of sufficient cash flow to fund and maintain both its operations and its obligations under the plan." C*oones v. Mut. Life Ins. Co. of N.Y.,* 168 B.R. 247, 255 (D.Wyo.1994),  aff'd, 56 F.3d 77 (10th Cir.1995).

Here, Debtor's Plan contemplates funding a small portion of Plan payments from the sale of real estate, with the overwhelming majority of the Plan being funded from Debtor's operations. However, Debtor has not presented any <u>evidence</u> to suggest that it will actually achieve the revenues its projection assert.  Debtor's Plan fails to identify one single project Debtor has presently been contracted complete, let alone an extended pipeline necessary to give any meaning to Debtors projections.

Moreover, when Debtor's past performance is considered, it becomes even more apparent that Debtor's projections are little more than "visionary promises."  Debtor's predecessor, the Original CGC is in the process of being liquidated.  Debtor, the successor to the Original CGC, only *three (3) years* after the Original CGC's bankruptcy and its formation is now, itself a debtor in a bankruptcy.  In its best year ever, Debtor *grossed* less than $1,000,000.00.  Debtor has failed to note in its Plan what Debtor's profits were in prior years.  However, Debtor's Plan projects that Debtor is suddenly going to earn more than four (4) times its best year ever, but without identifying any projects that would be the source of this materially increased revenue. Moreover,

while during the first two (2) years of its existence, Debtor grossed just under $1,000,000.00, in 2020, Debtor's revenue dropped in half.  In 2021, Debtor has grossed only $70,000.00!  While some of Debtor's revenue decrease in 2020 can be attributed to the pandemic, given the home improvement boom during the pandemic, if the Debtor's business were truly viable, any impact would have been short lived at the outset, and would have had a modest overall impact on 2020 revenue.  The pandemic, however, cannot excuse the fact that Debtor has earned extremely nominal revenue in 2021, but has proposed a Plan predominantly dependent upon exponentially greater future revenues than it has ever achieved, after two (2) years of declining performance.

As such, Debtor has plainly failed to demonstrate that its Plan is viable.  Rather, because Debtor has refused to sell the Danton Lane property, and, instead, has shifted the onus for payment of virtually all of Debtor's debts to future revenues, Debtor has presented a Plan that is destined for failure.  Therefore, the Plan is not viable and should not be confirmed.

Further still, because the Plan contemplates payments over the course of five (5) years, but Debtor failed to even append the five (5) year projection that the Plan said were to have been attached, the Plan clearly fails to satisfy the viability prong for this reason as well.

### ii. The Plan has not been proposed in good faith.

A plan is confirmable only if it is proposed in good faith. 11 U.S.C. § 1129(a)(3).  In analyzing whether a plan has been proposed in good faith under § 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Combustion Eng'g*, 391 F.3d at 247 (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)). Specifically, under Chapter 11, the two (2) "recognized" policies, or objectives, are "preserving going concerns and **maximizing property available to satisfy creditors**[.]" *Bank of Am. Nat.'l Trust and  Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999) (citing

*Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 115 L. Ed. 2d 145, (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir. 1989), "discourag[ing] debtor misconduct," id., "the **expeditious** liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339-43 (3d Cir. 2006).

The term "good faith" as used in this section is not defined by the Bankruptcy Code. *In re Madison Hotel Assocs.*, 749 F.2d 410, 424 (7th Cir. 1984). "'[T]he term is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.' " *203 N. LaSalle St. P'ship*, 126 F.3d at 969 (quoting *Madison Hotel*, 749 F.2d at 424-25).   In evaluating whether a plan has been proposed in good faith, the focus of the inquiry is the plan itself, which must be viewed based on the totality of the circumstances surrounding the development and proposal of that plan. *Madison Hotel*, 749 F.2d at 425; SM 104 Ltd., 160 B.R. at 244.

If a creditor is to receive payments over time, the present value of the claims to be paid must include the amount of its allowed claim, plus an appropriate rate of interest to compensate the creditor for risk as to those deferred payments. *Rake v. Wade*, 508 U.S. 464, 472, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993); *United Sav. Ass'n v. Timbers of Inwood Forest, Assocs., Ltd.*, 484 U.S. 365, 377, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988); *see also Airadigm Commc'ns, Inc. v. FCC* (*In re Airadigm Commc'ns*), 547 F.3d 763, 768-69 (7th Cir. 2008).

Here, Debtor's Plan has not been proposed in good faith for several reasons.

First, and most fundamentally, the Plan does not call for the sale of Danton Lane.  Danton Lane serves no business purpose whatsoever, but constitutes virtually all of Debtor's recurring expenses (as per its projections) costing Debtor $4,125.00 per month.   It is also, by far, the asset of Debtor with by far the greatest liquidation value—more than double that of any other asset.  If Danton Lane were liquidated, not only would Debtor's monthly expenses be materially decreased to virtually zero, but the sum that will be available to Debtor's unsecured creditors without consideration of Debtor's future operations would more than <u>double</u>, thus resulting in a far more expeditious payment of the Debtor's debts <u>with no negative impact whatsoever on Debtor's ability to remain in business because the asset serves no legitimate business purpose</u>.  In turn, the proportion of Debtor's Plan that would need to be satisfied from future revenues would be materially decreased, thereby increasing the potential for the Debtor to put forth a feasible plan.

For these reasons alone, the Plan has clearly not been proposed in good faith.

The lack of good faith is made even more apparent when the reason why Debtor has elected to retain this asset is made clear: Danton Lane is Mr. Choates home, and he wants to keep it for his personal enjoyment and aggrandizement.  In fact, Debtor states that Mr. Choates has lived in this property rent free, and intends to continue to live in this property rent free, accepting such home as more than $50,000.00 per year in *de facto* compensation.[9]

However, the Debtor is a limited liability company that is not presently doing <u>any work</u>, and appears not to have had any projects for quite some time.  Therefore, as Mr. Choates is not an employee of the Debtor, but, instead, its sole equity stakeholder, it is grossly inappropriate for

---

[9] Upon information and belief, Mr. Choates has not reported this compensation on his tax returns.

Mr. Choates to take *any* compensation from Debtor unless and until Debtor is profitable in the form of distributions. Importantly, as noted above, Mr. Choates is employed by a third-party and owns other companies, and thus Mr. Choates does not rely upon the Debtor for support. Thus, in proposing to retain Danton Lane in order to allow Mr. Choates to live there rent free as *de facto* over $50,000.00 a year in compensation from an insolvent business, the Plan has not been proposed in good faith.

In addition, with respect to the five (5) properties Debtor proposes to liquidate, the proportion that is to be paid to the Sub-Chapter V Trustee versus the proportion that is to be retained by Debtor is unreasonable and therefore has not been proposed in good faith.  While Debtor has not made an adequate disclosure to allow Objecting Creditors to properly analyze the tax consequences of a liquidation of Debtor's real property, based upon the limited information in the plan as well as publicly available data, any profits from the liquidation would be taxed as capital gains at rates far below thirty-five percent (35%).  Likewise, Debtor's cash flow projects indicate that, aside from the huge carrying costs for Danton Lane, which Debtor should never have proposed to retain, Debtor has negligible operating expenses except when it is performing a construction contract, and for which the Debtor would typically negotiate payment terms with the projects owner or general contractor that would allow Debtor to remain cash flow positive. Thus, Debtor's operating needs do not give rise to a legitimate need for this major withholding.

Accordingly, in proposing to retain thirty-five percent (35%) of the liquidation value of Debtor's real property, Debtor has not proposed its Plan in good faith.

Further still, in failing to append its five-year projections (which the Plan indicates were to be appended), the Plan has not been proposed in good faith.

Finally, despite proposing to satisfy its debts over a potentially extended period of time, Debtor's Plan fails to propose the payment of interest on any of its debts.

Accordingly, for each or any of these reasons, Debtor's Plan has not been proposed in good faith.

Therefore, because the Plan is not viable and has not been proposed in good faith, the Plan should not be confirmed.

### B.  Alternatively, the Debtor should be required to proffer a Disclosure Statement.

Under Subchapter V, a Debtor is not required to file a separate Disclosure Statement, however, its Plan must still provide creditors with "adequate information" as such term is defined in the Code.

If, a Plan does not contain Adequate Information, the Court may order the Debtor to file a Disclosure Statement.  11 U.S.C. 1187(c).

Here, while it is clear on the face of the Plan that it is not feasible and has not been proposed in good faith, alternatively, the Debtor has failed to provide adequate information regarding the Debtor, including, *inter alia* (a) the sources of its prospective revenues from which it intends to fund the plan, (b) the business justification for the retention of Danton Lane and/or the payment of any compensation to Mr. Choates, or (c) the basis for the proposed 35/65 split from the proceeds of property liquidations.

<div style="margin-left:40%">

Respectfully submitted,
**SILVERANG ROSENZWEIG**
**& HALTZMAN, LLC**
By:      /s/  William C. Katz
         William C. Katz, Esquire
         Mark S. Haltzman, Esquire
         Attorney ID Nos. 026451983/007502007
         *Attorneys for Creditor(s):*
         *Drexel Properties GP, LLC and*
         *Philly Properties GP, LLC*

</div>

# EXHIBIT 1

Case 21-13085-ABA    Doc 68    Filed 08/19/21    Entered 08/19/21 17:03:10    Desc Main
Document     Page 23 of 88

**CONVERTED, NoLOC**

# U.S. Bankruptcy Court
## District of New Jersey (Camden)
## Bankruptcy Petition #: 18-26699-JNP

*Date filed:* 08/21/2018
*Date converted:* 02/07/2019
*341 meeting:* 03/18/2019
*Deadline for filing claims:* 03/15/2021

*Assigned to:* Judge Jerrold N. Poslusny Jr.
Chapter 7
Previous chapter 11
Original chapter 11
Voluntary
Asset

| | |
|---|---|
| ***Debtor***<br>**Choates General Contracting, Inc.**<br>PO Box 46313<br>Philadelphia, PA 19160<br>CAMDEN-NJ<br>Tax ID / EIN: 20-8738479 | represented by **Harrison Ross Byck**<br>Kasuri Byck, LLC.<br>340 Route 1 North<br>Edison, NJ 08817<br>732-253-7630<br>Fax : 732-253-7632<br>Email: lawfirm@kasuribyck.com |
| ***Trustee***<br>**Barry R. Sharer**<br>Sharer Petree Brotz & Snyder<br>1103 Laurel Oak Road<br>Suite 105B<br>Voorhees, NJ 08043<br>856-435-3200 | represented by **Joseph A McCormick, Jr.**<br>Joseph A. McCormick, Jr., P.A.<br>76 Euclid Ave<br>Haddonfield, NJ 08033<br>(856) 795-6500<br>Fax : (856) 795-6578<br>Email: jmccormick@mccormicknjlaw.com<br><br>**Edward L. Paul**<br>Paul and Katz, P.C.<br>1103 Laurel Oak Rd.<br>Suite 105C<br>Voorhees, NJ 08043<br>856-435-6565<br>Fax : 856-435-7064<br>Email: elp@edwardlpaulpc.com<br><br>**Paul Stadler Pflumm**<br>Joseph A. McCormick, Jr., P.A.<br>76 Euclid Avenue, Suite 103<br>Haddonfield, NJ 08033-2387<br>856-795-6500<br>Fax : 856-795-6578<br>Email: ppflumm@mccormicknjlaw.com<br><br>**Barry R. Sharer**<br>Sharer Petree Brotz & Snyder |

1103 Laurel Oak Road
Suite 105B
Voorhees, NJ 08043
856-282-0998
Fax : 856-435-4868
Email: CShapiro@SharerPBS.com

**U.S. Trustee**                  represented by **Jeffrey M. Sponder**
**U.S. Trustee**                                  Office of U.S. Trustee
US Dept of Justice                            One Newark Center
Office of the US Trustee                   Newark, NJ 07102
One Newark Center Ste 2100           973-645-2379
Newark, NJ 07102                      Email: jeffrey.m.sponder@usdoj.gov
(973) 645-3014

**U.S. Trustee**
**United States Trustee**
Office of the United States Trustee
One Newark Center
Suite 2100
Newark, NJ 07102
973-645-3014

| Filing Date | # | Docket Text |
|---|---|---|
| 08/21/2018 | 1<br>(7 pgs) | Chapter 11 Voluntary Petition Filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. Ch. 11 Small Business Balance Sheet due 09/4/2018. Ch. 11 Cash Flow Statement due 09/4/2018. Disclosure of Compensation for Attorney For Debtor09/4 /2018.Declaration Under Penalty of Perjury for Non Individual Debtors due 09/4/2018. List of Equity Security Holders due 09/4/2018. 20 Largest Unsecured Creditors due 09/4/2018. Schedule(s) due 09/4/2018.Statement of Financial Affairs for Non-Individuals due 09/4/2018. Ch. 11 Statement of Operations due 09/4/2018.Summary of Your Assets and Liabilities for Non Individuals due 09/4/2018. Ch. 11 Small Business Tax Return due 09/4/2018. Incomplete Filings due by 09/4/2018. Chapter 11 Debtors Exclusive Right to File a Plan Expires on 12/19/2018. (Byck, Harrison) (Entered: 08/21/2018) |
| 08/21/2018 | | Receipt of filing fee for Voluntary Petition (Chapter 11)( 18-26699) [misc,volp11a] (1717.00) Filing Fee. Receipt number A36933538, fee amount $ 1717.00. (re: Doc#1) (U.S. Treasury) (Entered: 08/21/2018) |
| 08/21/2018 | 2<br>(2 pgs) | Order to Show Cause Why Case Should Not be Dismissed for re: Failure to File Missing Documents. Missing Documents: Summary of Assets and Liabilities for Non-Individuals, Declaration Under Penalty of Perjury for Non Individual Debtors, Statement of Financial Affairs For Non-Individuals, Atty Disclosure Statement, 20 Largest Unsecured Creditors, List of Equity Security Holders, List of All Creditors, Statement of Corporate Ownership, Schedules A/B,D,E/F,G,H,. If an objection is filed a hearing will be held on: September 18, 2018 at 10:00AM Courtroom 4C. Service of notice of the entry of this order |

| | | |
|---|---|---|
| | | pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 8/21/2018. Objection to Order to Show Cause due by 9/4/2018. (kvr) (Entered: 08/22/2018) |
| 08/22/2018 | | Remark: Street address is 120 Peace Lane Glassboro, NJ 08028 (related document: 1 Voluntary Petition (Chapter 11) filed by Debtor Choates General Contracting, Inc.). (kvr) (Entered: 08/22/2018) |
| 08/24/2018 | 3 (3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 08/24/2018. (Admin.) (Entered: 08/25/2018) |
| 08/29/2018 | 4 (1 pg) | Notice of Appearance and Request for Service of Notice filed by Office of Unemployment Compensation Tax Services (UCTS) Department of Labor and Industry, Commonwealth of Pennsylvania (dmb) (Entered: 08/30/2018) |
| 09/06/2018 | 5 (7 pgs; 3 docs) | Motion to Extend Time to File Missing Schedules (related document:1 Voluntary Petition (Chapter 11) filed by Debtor Choates General Contracting, Inc.) Filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. Objection deadline is 9/13/2018. (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Byck, Harrison) (Entered: 09/06/2018) |
| 09/10/2018 | 6 (2 pgs) | Notice of Appearance and Request for Service of Notice filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. (Kreiser, Travis) (Entered: 09/10/2018) |
| 09/14/2018 | 7 (2 pgs) | Order Granting Motion to Extend Time to File Missing Schedules (Related Doc # 5). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 9/14/2018. Missing Schedules Due by 9/20/2018. (dac) (Entered: 09/14/2018) |
| 09/16/2018 | 8 (3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 09/16/2018. (Admin.) (Entered: 09/17/2018) |
| 09/20/2018 | 9 (45 pgs) | Missing Document(s): Atty Disclosure Statement, Declaration Under Penalty For Non Individual Debtors, 20 Largest Unsecured Creditors, List of Equity Security Holders, Statement of Financial Affairs For Non-Individuals, Schedules, Summary of Assets and Liabilities for Non-Individuals A/B,D,E/F,G,H, filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) Modified on 9/21/2018 REMAINING PAPERS HAVE BEEN FILED. STILL MISSING STATEMENT OF CORPORATE OWNERSHIP (dmb). (Entered: 09/20/2018) |
| 09/20/2018 | 10 (3 pgs) | Amendment to List of Creditors Fee Amount $ 31. Filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 09/20/2018) |
| 09/20/2018 | | Receipt of filing fee for Amended List of Creditors (Fee)( 18-26699-JNP) [misc,amdcma] ( 31.00) Filing Fee. Receipt number A37119617, fee amount $ 31.00. (re: Doc#10) (U.S. Treasury) (Entered: |

| | | |
|---|---|---|
| | | 09/20/2018) |
| 09/21/2018 | [11](2 pgs) | Order Respecting Amendment to Schedule(s) (related document:[10] Amended List of Creditors (Fee) filed by Debtor, Choates General Contracting, Inc.). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 9/21/2018. (dmb) (Entered: 09/21/2018) |
| 09/23/2018 | [12](3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 09/23/2018. (Admin.) (Entered: 09/24/2018) |
| 10/03/2018 | [13](4 pgs; 2 docs) | Notice of Appearance and Request for Service of Notice filed by Ryan Patrick McCarthy on behalf of Carpenter Funds of Philadelphia and Vicinity. (Attachments: # [1] Certificate of Service) (McCarthy, Ryan) (Entered: 10/03/2018) |
| 10/05/2018 | [14](1 pg) | Notice of Appearance and Request for Service of Notice filed by Jeffrey M. Sponder on behalf of U.S. Trustee. (Sponder, Jeffrey) (Entered: 10/05/2018) |
| 10/05/2018 | [15](2 pgs) | Meeting of Creditors - Chapter 11. 341(a) meeting to be held on 11/8/2018 at 01:00 PM at Bridge View - Camden. Proofs of Claim due by 2/6/2019. (jpp) (Entered: 10/05/2018) |
| 10/07/2018 | [16](4 pgs) | BNC Certificate of Notice - Meeting of Creditors. No. of Notices: 15. Notice Date 10/07/2018. (Admin.) (Entered: 10/08/2018) |
| 10/29/2018 | [17](3 pgs) | Motion re: MOTION FOR ORDER FOR WITHDRAWAL AND DISBURSEMENT OF FUNDS Filed by Choates General Contracting, Inc..Hearing scheduled for 11/20/2018 at 02:00 PM at JNP - Courtroom 4C, Camden. (Byck, Harrison) Modified on 11/7/2018 WITHDRAWN- PLEASE REFER TO DOCKET #20(kvr). (Entered: 10/29/2018) |
| 10/29/2018 | [18](3 pgs) | Certificate of Service (related document:[17] Motion (Generic) filed by Debtor Choates General Contracting, Inc.) filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 10/29/2018) |
| 10/30/2018 | | Correction Notice in Electronic Filing (related document:[17] Motion (Generic) filed by Debtor Choates General Contracting, Inc.). Type of Error: PDF IS MISSING PROPOSED FORM OF ORDER, filed by HARRISON ROSS BYCK, ESQUIRE. Please email to Judge's Chambers the Proposed Form of Order. (Entered: 10/30/2018) |
| 10/31/2018 | [19](86 pgs) | Motion re: Motion to Permit Distribution of Subcontract Funds which are not Property of the Estate to Carpenters Union Benefit Funds Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 11/27/2018 at 10:00 AM at JNP - Courtroom 4C, Camden. (Kreiser, Travis) Modified on 3/26/2019--MOTION HAS BEEN WITHDRAWN, SEE DOCUMENT # 70 (Drayton, Birdena). (Entered: 10/31/2018) |

| Date | Doc | Description |
|---|---|---|
| 11/06/2018 | 20<br>(1 pg) | Withdrawal of Document (related document:17 Motion (Generic) filed by Debtor Choates General Contracting, Inc.) filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 11/06/2018) |
| 11/13/2018 | 21<br>(1 pg) | Notice of Hearing for: Status Conference. The following parties were served: Debtor, Debtor's Attorney, US Trustee. Hearing scheduled for 12/20/2018 at 10:00 AM at JNP - Courtroom 4C, Camden. (cmf) (Entered: 11/13/2018) |
| 11/15/2018 | 22<br>(2 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 11/15/2018. (Admin.) (Entered: 11/16/2018) |
| 11/20/2018 | | Minute of 11/20/2018, OUTCOME - Withdrawn (related document(s): 17 Motion (Generic) filed by Choates General Contracting, Inc.) (dac) (Entered: 11/20/2018) |
| 11/20/2018 | 23<br>(2 pgs) | Notice of Appearance and Request for Service of Notice filed by Larry L. Miller on behalf of Kamco Building Supply Corp.. (Miller, Larry) (Entered: 11/20/2018) |
| 11/26/2018 | 24<br>(2 pgs) | Determination of Adjournment Request Granted. Hearing will be adjourned to 1/15/2019 at 10:00AM. The hearing date is Peremptory. (related document:19 Motion (Generic) filed by Creditor Philadelphia D&M, Inc.) (kvr) (Entered: 11/26/2018) |
| 11/27/2018 | | Hearing Rescheduled from 11/27/2018 (related document(s): 19 Motion (Generic) filed by Philadelphia D&M, Inc.) Hearing scheduled for 01/15/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 11/27/2018) |
| 12/03/2018 | 25<br>(1 pg) | Certificate of Service. filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. (Kreiser, Travis). Related document(s) 19 Motion re: Motion to Permit Distribution of Subcontract Funds which are not Property of the Estate to Carpenters Union Benefit Funds filed by Creditor Philadelphia D&M, Inc.. Modified on 12/3/2018--PDF CONTAINS ACCEPTANCE OF SERVICE BY DEBTOR OF MOTION (Drayton, Birdena). (Entered: 12/03/2018) |
| 12/03/2018 | 26<br>(15 pgs; 4 docs) | Application For Retention of Professional Harrison Ross Byck as Attorney Filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. Objection deadline is 12/10/2018. (Attachments: # 1 Certification # 2 Proposed Order # 3 Certificate of Service) (Byck, Harrison) (Entered: 12/03/2018) |
| 12/07/2018 | 27<br>(22 pgs) | Amended Schedule(s) : A/B,E/F,G,Summary of Schedules,Other Schedules re:Voluntary Petition Fee Amount $ 31 filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 12/07/2018) |
| 12/07/2018 | | Receipt of filing fee for Amended Schedules (Fee Attorney)( 18-26699-JNP) [misc,amdsch3a] ( 31.00) Filing Fee. Receipt number A37766140, fee amount $ 31.00. (re: Doc#27) (U.S. Treasury) |

| | | (Entered: 12/07/2018) |
|---|---|---|
| 12/11/2018 | [28](#)<br>(2 pgs) | Order Respecting Amendment to Schedule(s) E/F,G (related document:[27](#) Amended Schedules (Fee Attorney) filed by Debtor Choates General Contracting, Inc.). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 12/11/2018. (bed) (Entered: 12/11/2018) |
| 12/11/2018 | [29](#)<br>(2 pgs) | Order Granting Application to Employ Harrison Ross Byck, Esq as Debtor's Attorney (Related Doc # [26](#)). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 12/11/2018. (kvr) (Entered: 12/11/2018) |
| 12/13/2018 | [30](#)<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 12/13/2018. (Admin.) (Entered: 12/14/2018) |
| 12/13/2018 | [31](#)<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 12/13/2018. (Admin.) (Entered: 12/14/2018) |
| 12/14/2018 | [32](#)<br>(2 pgs) | Notice of Appearance and Request for Service of Notice filed by Seth Ptasiewicz on behalf of Carpenter Funds of Philadelphia and Vicinity. (Ptasiewicz, Seth) (Entered: 12/14/2018) |
| 12/17/2018 | [33](#)<br>(8 pgs; 3 docs) | Application For Retention of Professional Oliver Youssef as Accountant Filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. Objection deadline is 12/26/2018. (Attachments: # [1](#) Certification # [2](#) Proposed Order) (Byck, Harrison) (Entered: 12/17/2018) |
| 12/18/2018 | [34](#)<br>(7 pgs) | Certificate of Service (related document:[33](#) Application for Retention filed by Debtor Choates General Contracting, Inc.) filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 12/18/2018) |
| 12/19/2018 | [35](#)<br>(19 pgs; 3 docs) | BriefAffidavit in Opposition to Philadelphia D&M, Inc.'s Motion to Distribute Funds to the Carpenters Union Benefit Funds (related document:[19](#) Motion re: Motion to Permit Distribution of Subcontract Funds which are not Property of the Estate to Carpenters Union Benefit Funds Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 11/27/2018 at 10:00 AM at JNP - Courtroom 4C, Camden. filed by Creditor Philadelphia D&M, Inc.) filed by Larry L. Miller on behalf of Kamco Building Supply Corp.. (Attachments: # [1](#) Affidavit Affidavit of John Merulla in Opposition to Philadelphia D&M, Inc.'s Motion to Distribute Funds to the Carpenters Union Benefit Funds # [2](#) Certificate of Service Certificate of Service of Brief and Affidavit in Opposition to Philadelphia D&M, Inc.'s Motion to Distribute Funds to the Carpenters Union Benefit Funds) (Miller, Larry) (Entered: 12/19/2018) |
| 12/19/2018 | [36](#)<br>(21 pgs; 5 docs) | Motion to Appoint Trustee Filed by Jeffrey M. Sponder on behalf of U.S. Trustee OR IN THE ALTERNATIVE CONVERSION TO |

| | | |
|---|---|---|
| | | CHAPTER 7. Hearing scheduled for 1/22/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Attachments: # 1 Memorandum of Law # 2 Certification # 3 Proposed Order Directing Appointment of Chapter 11 Trustee # 4 Proposed Conversion Order) (Sponder, Jeffrey) Modified on 12/20/2018 INCORRECT HEARING DATE CHOSEN- CORRECT HEARING DATE WILL BE 1/17/2018 AT 10:00am (kvr). Modified on 12/20/2018 TO CLARIFY DOCKET TEXT (dmb). (Entered: 12/19/2018) |
| 12/20/2018 | | Hearing Rescheduled from 1/22/2019 TO 1/17/2019 AT 10:00AM. (related document:36 Motion to Appoint Trustee Filed by Jeffrey M. Sponder on behalf of U.S. Trustee. Hearing scheduled for 1/22/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Sponder, Jeffrey) Modified on 12/20/2018 INCORRECT HEARING DATE CHOSEN- CORRECT HEARING DATE WILL BE 1/17/2018 AT 10:00am (kvr). filed by U.S. Trustee U.S. Trustee) Hearing scheduled for 1/17/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 12/20/2018) |
| 12/20/2018 | | Hearing Rescheduled from 12/20/2018 (related document(s): 21 Notice of Hearing (Upload)) Hearing scheduled for 01/17/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 12/20/2018) |
| 12/21/2018 | 37 (7 pgs; 2 docs) | Application to Shorten Time (related document:36 Motion to Appoint Trustee filed by U.S. Trustee U.S. Trustee) Filed by Jeffrey M. Sponder on behalf of U.S. Trustee. (Attachments: # 1 Proposed Order Shortening Time) (Sponder, Jeffrey) (Entered: 12/21/2018) |
| 12/26/2018 | 38 (3 pgs) | Order Granting Application to Shorten Time (related document:36 Motion to Appoint Trustee filed by U.S. Trustee U.S. Trustee). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 12/26/2018. Hearing scheduled for 1/3/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 12/26/2018) |
| 12/27/2018 | 39 (2 pgs) | Order Granting Application to Employ Oliver Youssef as Accountant (Related Doc # 33). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 12/27/2018. (kvr) (Entered: 12/27/2018) |
| 12/28/2018 | 40 (4 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 12/28/2018. (Admin.) (Entered: 12/29/2018) |
| 12/28/2018 | 42 (3 pgs) | GENERAL ORDER INCORPORATING BY REFERENCE STANDING ORDER 18-4 OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY AS APPLIED TO BANKRUPTCY CASES AND ADVERSARY PROCEEDINGS. All litigation in a bankruptcy case or adversary proceeding pending in the United States Bankruptcy Court for the District of New Jersey involving as a party the United States of America, its agencies, and/or any other party represented by the Department of Justice or the United States Attorneys Office is immediately suspended, and held in abeyance continuing either (1) until the federal government is funded through congressional appropriation, or (2) for a period of 30 days from |

|  |  |  |
|---|---|---|
|  |  | the date of the District Court Standing Order 18-4, whichever comes sooner. This Order includes as to the United States, the Department of Justice, or the U.S. Attorneys Office, the suspension of all pending deadlines to file proofs of claim, objections to: discharge, dischargeability, and confirmation of cases under Chapter 11 or Chapter 13 of the Bankruptcy Code for this period. Notice of the entry of this order under Fed. R. Bankr. P. 9022 has been given to the following parties in this case: All registered efiling attorneys, self-represented debtors (if this is a bankruptcy case,) or self-represented plaintiffs and defendants (if this is an adversary proceeding.) Please see the Court's website, njb.uscourts.gov for more information as it becomes available.. (cmf) (Entered: 01/09/2019) |
| 12/29/2018 | <u>41</u><br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 12/29/2018. (Admin.) (Entered: 12/30/2018) |
| 01/03/2019 |  | Minute of 1/3/2019 OUTCOME: Granted (related document(s): <u>36</u> Motion to Appoint Trustee filed by U.S. Trustee) (kvr) (Entered: 01/03/2019) |
| 01/11/2019 | <u>43</u><br>(2 pgs) | Order Granting Motion to Appoint Chapter 11 Trustee Pursuant To 11 U.S.C. Section 1104(a). (Related Doc # <u>36</u>). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 1/11/2019. (kvr) (Entered: 01/11/2019) |
| 01/11/2019 | <u>44</u><br>(3 pgs) | Substitution of Attorney, terminating Ryan Patrick McCarthy and adding Seth Ptasiewicz for Carpenter Funds of Philadelphia and Vicinity. Filed by Ryan Patrick McCarthy on behalf of Carpenter Funds of Philadelphia and Vicinity. (McCarthy, Ryan) Modified on 1/15/2019--SUBSTITUTION NOT SIGNED BY BOTH ATTORNEYS (Drayton, Birdena). (Entered: 01/11/2019) |
| 01/11/2019 | <u>45</u><br>(4 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 01/11/2019. (Admin.) (Entered: 01/12/2019) |
| 01/13/2019 | <u>46</u><br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 01/13/2019. (Admin.) (Entered: 01/14/2019) |
| 01/15/2019 |  | Correction Notice in Electronic Filing (related document:<u>44</u> Substitution of Attorney filed by Creditor Carpenter Funds of Philadelphia and Vicinity). Type of Error: Substitution of Attorney not signed by both attorneys, filed by Ryan McCarthy. Please correct and refile with the court. (bed) (Entered: 01/15/2019) |
| 01/15/2019 |  | Hearing Rescheduled from 1/15/2019 (related document(s): <u>19</u> Motion (Generic) filed by Philadelphia D&M, Inc.) Hearing scheduled for 02/05/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 01/15/2019) |
| 01/16/2019 | <u>47</u><br>(1 pg) | Notice of Appointment of Trustee Barry R. Sharer filed by U.S. Trustee. (United States Trustee, by Martha Hildebrandt, Assistant United States Trustee) (Entered: 01/16/2019) |

| | | |
|---|---|---|
| 01/16/2019 | 48<br>(5 pgs; 3 docs) | Application re: for an Order Approving the Appointment of Trustee Filed by U.S. Trustee. Objection deadline is 1/23/2019. (Attachments: # 1 Verified Statement of Barry R. Sharer # 2 Proposed Order Approving Appointment of Trustee) (United States Trustee, by Martha Hildebrandt, Assistant United States Trustee) (Entered: 01/16/2019) |
| 01/17/2019 | | Minute of 1/17/2019, OUTCOME - Granted, Order Entered (related document(s): 36 Motion to Appoint Trustee filed by U.S. Trustee) (dac) (Entered: 01/17/2019) |
| 01/17/2019 | | Hearing Rescheduled from 1/17/2019 (related document(s): 21 Notice of Hearing (Upload)) Hearing scheduled for 02/07/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 01/17/2019) |
| 01/17/2019 | 49<br>(2 pgs) | Order Granting Application Approving The Appointment Of A Chapter 11 Trustee By Acting United States Trustee (Related Doc # 48). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 1/17/2019. (kvr) (Entered: 01/17/2019) |
| 01/18/2019 | 50<br>(3 pgs) | Substitution of Attorney, Filed by Ryan Patrick McCarthy on behalf of Carpenter Funds of Philadelphia and Vicinity. (McCarthy, Ryan) (Entered: 01/18/2019) |
| 01/18/2019 | 51<br>(12 pgs) | Monthly Operating Report for Filing Period September 2018 filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 01/18/2019) |
| 01/19/2019 | 52<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 01/19/2019. (Admin.) (Entered: 01/20/2019) |
| 02/05/2019 | | Hearing Rescheduled from 2/5/2019 (related document(s): 19 Motion (Generic) filed by Philadelphia D&M, Inc.) Hearing scheduled for 02/19/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 02/05/2019) |
| 02/06/2019 | 53<br>(10 pgs) | Amended Schedule(s) : A/B,Summary of Schedules filed by Harrison Ross Byck on behalf of Choates General Contracting, Inc.. (Byck, Harrison) (Entered: 02/06/2019) |
| 02/07/2019 | | Minute of 2/7/2019, OUTCOME - Case Converted to Chapter 7, Order to be Submitted (related document(s): 21 Notice of Hearing (Upload)) (dac) (Entered: 02/07/2019) |
| 02/07/2019 | 54<br>(2 pgs) | Order Converting Case To Chapter 7 Relating To The Unopposed Oral Motion Of Chapter 11 Trustee. Barry R. Sharer removed from the case . Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 2/7/2019. Missing schedules due within 14 days of the date of the order. (kvr) (Entered: 02/07/2019) |
| 02/09/2019 | 55<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 02/09/2019. (Admin.) (Entered: 02/10/2019) |

| | | |
|---|---|---|
| 02/13/2019 | | Proof of Claim Deadline Terminated, Reason: Case Converted to a No Asset Chapter 7 Case (mrm) (Entered: 02/13/2019) |
| 02/14/2019 | 56<br>(1 pg) | Notice of Appointment of Trustee Barry R. Sharer filed by United States Trustee. (United States Trustee, by Martha Hildebrandt, Assistant United States Trustee) (Entered: 02/14/2019) |
| 02/14/2019 | 57<br>(2 pgs) | Appointment of Trustee.Trustee Barry R. Sharer appointed to case. Meeting of Creditors 341(a) meeting to be held on 3/18/2019 at 02:00 PM at Room 129, Clarkson S. Fisher Courthouse. (United States Trustee, by Martha Hildebrandt, Assistant United States Trustee) (Entered: 02/14/2019) |
| 02/14/2019 | 58<br>(11 pgs; 4 docs) | Application For Retention of Professional Sharer Petree Brotz & Snyder as Accountant Filed by Barry R. Sharer on behalf of Barry R. Sharer. Objection deadline is 2/21/2019. (Attachments: # 1 Certification # 2 Certificate of Service # 3 Proposed Order) (Sharer, Barry) (Entered: 02/14/2019) |
| 02/14/2019 | 59<br>(12 pgs; 3 docs) | Application For Retention of Professional Joseph A. McCormick, Jr., Esq. as Attorney for Trustee Filed by Joseph A McCormick Jr. on behalf of Barry R. Sharer. Objection deadline is 2/21/2019. (Attachments: # 1 Certification # 2 Proposed Order) (McCormick, Joseph) (Entered: 02/14/2019) |
| 02/14/2019 | 60<br>(3 pgs) | Certificate of Service (related document:59 Application for Retention filed by Trustee Barry R. Sharer) filed by Joseph A McCormick Jr. on behalf of Barry R. Sharer. (McCormick, Joseph) (Entered: 02/14/2019) |
| 02/15/2019 | 61<br>(2 pgs) | Determination of Adjournment Request Granted. Hearing will be adjourned to 3/26/2019 at 10:00am. The hearing date is Not Peremptory. (related document:19 Motion (Generic) filed by Creditor Philadelphia D&M, Inc.) (kvr) (Entered: 02/15/2019) |
| 02/15/2019 | 62<br>(1 pg) | Response to (related document:19 Motion re: Motion to Permit Distribution of Subcontract Funds which are not Property of the Estate to Carpenters Union Benefit Funds Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 11/27/2018 at 10:00 AM at JNP - Courtroom 4C, Camden. filed by Creditor Philadelphia D&M, Inc.) filed by Joseph A McCormick Jr. on behalf of Barry R. Sharer. (McCormick, Joseph) (Entered: 02/15/2019) |
| 02/16/2019 | 63<br>(4 pgs) | BNC Certificate of Notice - Meeting of Creditors. No. of Notices: 28. Notice Date 02/16/2019. (Admin.) (Entered: 02/17/2019) |
| 02/19/2019 | | Hearing Rescheduled from 2/19/2019 (related document(s): 19 Motion (Generic) filed by Philadelphia D&M, Inc.) Hearing scheduled for 03/26/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (dac) (Entered: 02/19/2019) |
| 02/22/2019 | 64<br>(2 pgs) | Order Granting Application to Employ Sharer Petree Brotz & Snyder as Accountant (Related Doc # 58). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See |

| | | BNC Certificate of Notice. Signed on 2/22/2019. (kvr) (Entered: 02/22/2019) |
|---|---|---|
| 02/22/2019 | 65<br>(3 pgs) | Order Granting Application to Employ Joseph McCormick, Jr as Attorney for Trustee (Related Doc # 59). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 2/22/2019. (kvr) (Entered: 02/22/2019) |
| 02/24/2019 | 66<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 02/24/2019. (Admin.) (Entered: 02/25/2019) |
| 02/24/2019 | 67<br>(4 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 02/24/2019. (Admin.) (Entered: 02/25/2019) |
| 02/28/2019 | 68<br>(1 pg) | Notice of Appearance and Request for Service of Notice filed by Pamela Elchert Thurmond on behalf of City of Philadelphia. (Thurmond, Pamela) (Entered: 02/28/2019) |
| 03/25/2019 | 69<br>(110 pgs) | Motion re: Motion to Approve Settlement AND DIRECT PAYMENT TO CARPENTERS UNION AND KAMCO, INC. Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 4/9/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Kreiser, Travis) Modified on 3/26/2019 TO CLARIFY DOCKET TEXT (dac). (Entered: 03/25/2019) |
| 03/25/2019 | 70<br>(2 pgs) | Withdrawal of Document (related document:19 Motion (Generic) filed by Creditor Philadelphia D&M, Inc.) filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. (Kreiser, Travis) (Entered: 03/25/2019) |
| 03/25/2019 | 71<br>(1 pg) | Status Change Form. The matter has been withdrawn, re:(related document:19 Motion (Generic) filed by Creditor Philadelphia D&M, Inc.) filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. (Kreiser, Travis) (Entered: 03/25/2019) |
| 03/26/2019 | | Correction Notice in Electronic Filing (related document:69 Motion (Generic) filed by Creditor Philadelphia D&M, Inc.). Type of Error: Documents are One PDF and not properly separated as each individual PDF, i.e. one for Notice of Motion; another for Proposed Order etc. filed by Travis Kreiser, Esquire. This is for Future Reference Only. (dac) (Entered: 03/26/2019) |
| 03/26/2019 | | Minute of 3/26/2019, OUTCOME - Motion Withdrawn (related document(s): 19 Motion (Generic) filed by Philadelphia D&M, Inc.) (dac) (Entered: 03/26/2019) |
| 03/26/2019 | 72<br>(7 pgs; 2 docs) | Response to (related document:69 Motion re: Motion to Approve Settlement AND DIRECT PAYMENT TO CARPENTERS UNION AND KAMCO, INC. Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 4/9/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Kreiser, Travis) Modified on 3/26/2019 TO CLARIFY DOCKET TEXT (dac). filed by Creditor |

| | | Philadelphia D&M, Inc.) filed by Larry L. Miller on behalf of Kamco Building Supply Corp.. (Attachments: # 1 Certificate of Service) (Miller, Larry) (Entered: 03/26/2019) |
|---|---|---|
| 03/28/2019 | 73 (3 pgs) | Objection to Motion to Approve Settlement and Direct Payment to Carpenters Union and Kamco, Inc. (related document:69 Motion re: Motion to Approve Settlement AND DIRECT PAYMENT TO CARPENTERS UNION AND KAMCO, INC. Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 4/9/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Kreiser, Travis) Modified on 3/26/2019 TO CLARIFY DOCKET TEXT (dac). filed by Creditor Philadelphia D&M, Inc.) filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 03/28/2019) |
| 03/28/2019 | 74 (2 pgs) | Certificate of Service (related document:73 Objection filed by Trustee Barry R. Sharer) filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 03/28/2019) |
| 04/08/2019 | 75 (6 pgs) | Response to (related document:69 Motion re: Motion to Approve Settlement AND DIRECT PAYMENT TO CARPENTERS UNION AND KAMCO, INC. Filed by Travis L. Kreiser on behalf of Philadelphia D&M, Inc.. Hearing scheduled for 4/9/2019 at 10:00 AM at JNP - Courtroom 4C, Camden. (Kreiser, Travis) Modified on 3/26/2019 TO CLARIFY DOCKET TEXT (dac). filed by Creditor Philadelphia D&M, Inc.) filed by Seth Ptasiewicz on behalf of Carpenter Funds of Philadelphia and Vicinity. (Ptasiewicz, Seth) (Entered: 04/08/2019) |
| 04/09/2019 | | Minute of 4/9/2019, OUTCOME - Denied Without Prejudice, Order to be Submitted (related document(s): 69 Motion (Generic) filed by Philadelphia D&M, Inc.) (dac) (Entered: 04/09/2019) |
| 04/11/2019 | 76 (2 pgs) | Order Denying Motion To Approve Settlement And Direct Payment To Carpenters Union And Kamco, Inc.. (Related Doc # 69). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 4/11/2019. (kvr) (Entered: 04/11/2019) |
| 04/13/2019 | 77 (3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 04/13/2019. (Admin.) (Entered: 04/14/2019) |
| 03/20/2020 | 78 (12 pgs) | Stipulation Between Barry R. Sharer and Philadelphia D&M, Inc.; Kamco Building Supply corp.; The Carpenters Benefit Funds of Philadelphia; Keystone+Mountain Regional Council of Carpenters, re:Rights to account receivable owed by Philadelphi D&M, inc. filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 03/20/2020) |
| 03/20/2020 | 79 (2 pgs) | Notice of Proposed Compromise or Settlement of Controversy re: Settlement regarding disputed rights to accounts receivable. Hearing scheduled for 04/20/2020. Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objections due by 04/13/2020. (Pflumm, Paul) (Entered: 03/20/2020) |

| | | |
|---|---|---|
| 03/25/2020 | 80<br>(4 pgs) | BNC Certificate of Notice. No. of Notices: 31. Notice Date 03/25/2020. (Admin.) (Entered: 03/26/2020) |
| 04/14/2020 | 81<br>(1 pg) | Certification of No Objection in re: Settlement Of Controversy. (related document:79 Notice of Proposed Compromise or Settlement of Controversy re: Settlement regarding disputed rights to accounts receivable. Hearing scheduled for 04/20/2020. Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objections due by 04/13/2020. filed by Trustee Barry R. Sharer). The Clerk hereby certifies that no objection to this Notice of Information has been filed. (bed) (Entered: 04/14/2020) |
| 04/30/2020 | 82<br>(2 pgs; 2 docs) | Notice of Hearing for: Chapter 7 Status. The following parties were served: Trustee. Hearing scheduled for 5/26/2020 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 04/30/2020) |
| 05/22/2020 | 83<br>(1 pg) | Status Report (related document:82 Notice of Hearing (Upload)) filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 05/22/2020) |
| 05/26/2020 | | Minute of 5/26/2020 Hearing Held and Continued. OUTCOME: Status Filed (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 11/17/2020 at 11:00 AM at JNP - Courtroom 4C, Camden. (PriscillaRomero) (Entered: 05/26/2020) |
| 06/17/2020 | 84<br>(8 pgs; 3 docs) | Application For Retention of Professional Patricia Pappano of Keller Williams Real Estate as Real Estate Broker Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objection deadline is 6/24/2020. (Attachments: # 1 Certification # 2 Proposed Order) (Pflumm, Paul) (Entered: 06/17/2020) |
| 06/17/2020 | 85<br>(2 pgs) | Certificate of Service (related document:84 Application for Retention filed by Trustee Barry R. Sharer) filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 06/17/2020) |
| 06/25/2020 | 86<br>(3 pgs; 2 docs) | Order Granting Application to Employ Keller Williams Real Estate as Realtor (Related Doc # 84). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 6/25/2020. (Romero, Priscilla) (Entered: 06/26/2020) |
| 06/28/2020 | 87<br>(2 pgs) | BNC Certificate of Notice - Order No. of Notices: 2. Notice Date 06/28/2020. (Admin.) (Entered: 06/29/2020) |
| 06/28/2020 | 88<br>(3 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 06/28/2020. (Admin.) (Entered: 06/29/2020) |
| 07/16/2020 | 89<br>(2 pgs) | Document re: Supplemental Certification of Professional in Support of Application for Retention of Professional (related document:59 Application for Retention filed by Trustee Barry R. Sharer, 65 Order on Application For Retention) filed by Joseph A McCormick Jr. on behalf of Barry R. Sharer. (McCormick, Joseph) (Entered: 07/16/2020) |

| 10/06/2020 | 90<br>(11 pgs; 3 docs) | Application For Retention of Professional Edward L. Paul, Esq. as Special Counsel Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objection deadline is 10/13/2020. (Attachments: # 1 Certification # 2 Proposed Order) (Pflumm, Paul) (Entered: 10/06/2020) |
|---|---|---|
| 10/07/2020 | 91<br>(3 pgs) | Certificate of Service (related document:90 Application for Retention filed by Trustee Barry R. Sharer) filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 10/07/2020) |
| 10/15/2020 | 92<br>(3 pgs) | Order Granting Application to Employ Edward L. Paul, Esq as Special Counsel (Related Doc # 90). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 10/15/2020. (kvr) (Entered: 10/17/2020) |
| 10/21/2020 | 93<br>(5 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 10/21/2020. (Admin.) (Entered: 10/22/2020) |
| 11/17/2020 | | Minute of Hearing Held 11/17/2020 and Continued. OUTCOME: Adjourned with appearances being required unless status is filed prior to the date of the hearing (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 12/01/2020 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 11/18/2020) |
| 12/01/2020 | | ** DISREGARD- AMENDED MINUTE DONE**Minute of 12/1/2020 OUTCOME: Case Closed (related document(s): 82 Notice of Hearing (Upload)) (PriscillaRomero) Modified on 12/3/2020 (kvr). (Entered: 12/01/2020) |
| 12/01/2020 | | AMENDED Minute of Hearing Held 12/1/2020 and Continued. OUTCOME: STATUS FILED; ADJOURNED AND CASE WILL NOT BE CLOSED (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 01/26/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 12/03/2020) |
| 12/03/2020 | 94<br>(1 pg) | Status Report filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 12/03/2020) |
| 12/15/2020 | 95<br>(2 pgs; 2 docs) | Notice of Assets & Request for Notice to Creditors filed by Barry R. Sharer. Proofs of Claim due by 3/15/2021. (Sharer, Barry) (Entered: 12/15/2020) |
| 12/17/2020 | 96<br>(1 pg) | Notice of Proposed Abandonment re: 1259 N. Dover St., Phila., PA and 920 Edgley St., Phila., PA. Hearing scheduled for 01/19/21 @ 11:00am. Filed by Barry R. Sharer on behalf of Barry R. Sharer. Objections due by 01/12/21. (Sharer, Barry) (Entered: 12/17/2020) |
| 12/19/2020 | 97<br>(4 pgs) | BNC Certificate of Notice re: Notice of Assets. No. of Notices: 34. Notice Date 12/19/2020. (Admin.) (Entered: 12/20/2020) |
| 12/20/2020 | 98<br>(4 pgs) | BNC Certificate of Notice. No. of Notices: 34. Notice Date 12/20/2020. (Admin.) (Entered: 12/21/2020) |

| | | |
|---|---|---|
| 12/23/2020 | 99<br>(28 pgs; 6 docs) | Motion to Sell Property Free and Clear of Liens under Section 363(f).Property for sale: Real property identified on the Debtor's Petition as 5010 Marshall Street, Philadelphia, PA 19120 and identified by the City of Philadelphia as Parcel #123N03-0148.. Fee Amount $188. Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Hearing scheduled for 1/26/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (Attachments: # 1 Memorandum of Law # 2 Certification # 3 Exhibit A # 4 Exhibit B # 5 Proposed Order) (Pflumm, Paul) Modified on 1/12/2021 TO REFLECT FEE HAS BEEN PAID; RECEIPT NUMBER 429645 (mrm). (Entered: 12/23/2020) |
| 12/23/2020 | 100<br>(2 pgs) | Notice of Proposed Private Sale re: Real property identified on the Debtor's Petition as 5010 Marshall Street, Philadelphia, PA 19120 and identified by the City of Philadelphia as Parcel #123N03-0148.(related document:99 Motion to Sell Free and Clear of Liens filed by Trustee Barry R. Sharer) Hearing scheduled for 01/26/2021. Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objections due by 01/19/2021. (Pflumm, Paul) (Entered: 12/23/2020) |
| 12/29/2020 | | Receipt of filing fee for Motion to Sell Free and Clear of Liens( 18-26699-JNP) [motion,msfracl] ( 188.00) Filing Fee. Receipt number EST ACCT, fee amount $ 188.00. (re: Doc#99) (mef) Modified on 1/12/2021 TO REFLECT FEE HAS BEEN PAID; RECEIPT NUMBER 429645 (mrm). (Entered: 12/29/2020) |
| 12/30/2020 | 101<br>(5 pgs) | BNC Certificate of Notice. No. of Notices: 34. Notice Date 12/30/2020. (Admin.) (Entered: 12/31/2020) |
| 01/12/2021 | | Receipt of Fee Amount $188.00, Receipt Number 429645. (related document:99 Motion to Sell Free and Clear of Liens filed by Trustee Barry R. Sharer). Fee received from Barry Sharer. (mrm) (Entered: 01/12/2021) |
| 01/13/2021 | 102<br>(1 pg) | Certification of No Objection in re: Abandonment. (related document:96 Notice of Proposed Abandonment re: 1259 N. Dover St., Phila., PA and 920 Edgley St., Phila., PA. Hearing scheduled for 01/19/21 @ 11:00am. Filed by Barry R. Sharer on behalf of Barry R. Sharer. Objections due by 01/12/21. filed by Trustee Barry R. Sharer). The Clerk hereby certifies that no objection to this Notice of Information has been filed. (Davis, Jerome) (Entered: 01/13/2021) |
| 01/13/2021 | | Notice of Proposed Abandonment Deadline Terminated, Reason: No Objection Filed (Davis, Jerome) (Entered: 01/13/2021) |
| 01/20/2021 | 103<br>(1 pg) | Certification of No Objection in re: Private Sale. (related document:100 Notice of Proposed Private Sale re: Real property identified on the Debtor's Petition as 5010 Marshall Street, Philadelphia, PA 19120 and identified by the City of Philadelphia as Parcel #123N03-0148.(related document:99 Motion to Sell Free and Clear of Liens filed by Trustee Barry R. Sharer) Hearing scheduled for 01/26/2021. Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. Objections due by 01/19/2021. filed by Trustee Barry R. Sharer). The Clerk hereby certifies that no objection to this Notice of Information has been filed. (Davis, Jerome) (Entered: 01/20/2021) |

| | | |
|---|---|---|
| 01/20/2021 | | Private Sale Deadline Terminated, Reason: No Objection Filed (Davis, Jerome) (Entered: 01/20/2021) |
| 01/25/2021 | 104<br>(1 pg) | Status Report filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 01/25/2021) |
| 01/26/2021 | | Minute of 1/26/2021 OUTCOME: Granted (related document(s): 99 Motion to Sell Free and Clear of Liens filed by Barry R. Sharer) (PriscillaRomero) (Entered: 01/27/2021) |
| 01/26/2021 | | Minute of 1/26/2021 OUTCOME: Granted (related document(s): 82 Notice of Hearing (Upload)) (PriscillaRomero) (Entered: 01/27/2021) |
| 01/26/2021 | | AMENDED Minute of Hearing Held ON 1/26/2021 and Continued. OUTCOME: STATUS FILED; ADJOURNED (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 03/30/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 01/29/2021) |
| 02/05/2021 | 105<br>(3 pgs) | Order Authorizing And Approving The Sale Of Real Property Free And Clear Of All Liens And Claims With Liens Attached To Proceeds, Pursuant To 11 U.S.C. §§363(b)(f) re: 5010 Marshall Street Philadelphia, PA 19120. (Related Doc # 99) Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 2/5/2021. (kvr) (Entered: 02/05/2021) |
| 02/07/2021 | 106<br>(5 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 02/07/2021. (Admin.) (Entered: 02/08/2021) |
| 02/23/2021 | | Receipt of Fee Amount $12.50 ($11.00 Certification Fee and $1.50 Copy Work Fee), Receipt Number 429730. (related document: 105 Order on Motion to Sell Free and Clear of Liens). Fee received from Law office of Paul & Katz, P.C. (mrm) (Entered: 02/23/2021) |
| 03/30/2021 | 107<br>(1 pg) | Status Report filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 03/30/2021) |
| 03/30/2021 | | Minute of Hearing Held 3/30/2021 and Continued. OUTCOME: Status filed; adjourned (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 07/13/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 03/30/2021) |
| 04/13/2021 | 108<br>(37 pgs; 9 docs) | Motion re: Motion (1) Authorizing Alternative Distribution and Subordinating Tax Liens Pursuant to § 724(b); (2) Amended Order Authorizing and Approving the Sale of Real Property, Free and Clear Of All Liens and Claims Pursuant to 11 U.S.C. §§363(b),(f)(5) with Corrected Notice; and for Related Relief Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Attachments: # 1 Memorandum of Law # 2 Certification # 3 Exhibit A # 4 Exhibit B # 5 Exhibit C # 6 Exhibit D # 7 Exhibit E # 8 Proposed Order) (Pflumm, Paul) Modified on 4/14/2021 - TO BE HEARD ON SHORTENED TIME. HEARING SCHEDULED FOR 4/27/2021 at 11:00 AM AT JNP - COURTROOM |

| | | 4C, CAMDEN. (jpl). (Entered: 04/13/2021) |
|---|---|---|
| 04/13/2021 | 109<br>(4 pgs; 2 docs) | Application to Shorten Time (related document:108 Motion re: Motion (1) Authorizing Alternative Distribution and Subordinating Tax Liens Pursuant to § 724(b); (2) Amended Order Authorizing and Approving the Sale of Real Property, Free and Clear Of All Liens and Claims Pursuant to 11 U.S.C. §& filed by Trustee Barry R. Sharer. §& filed by Trustee Barry R. Sharer) Filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Attachments: # 1 Proposed Order) (Pflumm, Paul) (Entered: 04/13/2021) |
| 04/14/2021 | 110<br>(3 pgs) | Order Granting Application to Shorten Time (related document:108 Motion re: Motion (1) Authorizing Alternative Distribution and Subordinating Tax Liens Pursuant to § 724(b); (2) Amended Order Authorizing and Approving the Sale of Real Property, Free and Clear Of All Liens and Claims Pursuant to 11 U.S.C. §& filed by Trustee Barry R. Sharer). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 4/14/2021. Hearing scheduled for 4/27/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (kvr) (Entered: 04/14/2021) |
| 04/16/2021 | 111<br>(5 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 04/16/2021. (Admin.) (Entered: 04/17/2021) |
| 04/27/2021 | | Minute of 4/27/2021, OUTCOME: Granted - Order to be signed (related document(s): 108 Motion (Generic) filed by Barry R. Sharer) (jpl) (Entered: 04/27/2021) |
| 04/27/2021 | 112<br>(3 pgs) | ORDER (1) AUTHORIZING ALTERNATIVE DISTRIBUTION AND SUBORDINATING TAX LIENS PURSUANT TO § 724(b); (2) AMENDING ORDER AUTHORIZING AND APPROVING THE SALE OF REAL PROPERTY, FREE AND CLEAR OF ALL LIENS AND CLAIMS PURSUANT TO 11 U.S.C. §§363(b),(f)(5) WITH CORRECTED NOTICE; AND FOR RELATED RELIEF. (Related Doc # 108). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 4/27/2021. (kvr) (Entered: 04/28/2021) |
| 04/30/2021 | 113<br>(5 pgs) | BNC Certificate of Notice - Order No. of Notices: 1. Notice Date 04/30/2021. (Admin.) (Entered: 05/01/2021) |
| 05/04/2021 | | Receipt of Fee Amount $12.50 ($11.00 Certification Fee and $1.50 Copy Work Fee), Receipt Number 429891. (related document:112 Order (Generic)). Fee received from Edward Paul, Esq. (mrm) (Entered: 05/04/2021) |
| 07/12/2021 | 114<br>(1 pg) | Status Report filed by Paul Stadler Pflumm on behalf of Barry R. Sharer. (Pflumm, Paul) (Entered: 07/12/2021) |
| 07/13/2021 | | Minute of 7/13/2021; Hearing Held and Continued. OUTCOME: Status filed - adjourn 90 days (related document(s): 82 Notice of Hearing (Upload)) Hearing scheduled for 10/12/2021 at 11:00 AM at JNP - Courtroom 4C, Camden. (jpl) (Entered: 07/13/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/19/2021 14:08:03 | | | |
| **PACER Login:** | Williamckatz | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 18-26699-JNP Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

# EXHIBIT 2



November 18,

TO: Austin Siboni

    Manager
    Lehigh Properties

FROM:  Joseph Geromini
    CEO, Choates G Construction

    RE: 34th Street

Austin,

Here is the invoice for the permits at 34th. Street.

Thanks!

Joe Geromini

PERMIT COST:    $11,860.00
Service Fee    593.00

| **TOTAL DUE** | **$12, 453.00** |
| --- | --- |

WIRE TRANSFER TO:
**Choates G Contracting llc**
**Philadelphia Federal Credit Union**
**Account 906927**
**Routing 236084298**
**Ein 83-1406201**

**Choates G Contracting, LLC.**
**401 Cooper Landing Road**
**Suite C-4, Cherry Hill, NJ 08002**
**T: 267-978-3040 / email: dchoatesgc@yahoo.com**

# EXHIBIT 3

| | |
|---|---|
| **From:** | Joseph Geromini <ackfog@aol.com> |
| **Sent:** | Tuesday, November 26, 2019 6:37 AM |
| **Subject:** | 34th St Invoice |
| **Attachments:** | cover for invoice 2.docx; DREXEL INVOICE #2.xlsx |

As per the Agreement of Invoicing submitted and due on 25th of each month...Here is our latest open Statement for 34th Street.

Thank you in advance.  Please notify with any questions.

Joe

Joseph Geromini
CEO
**Choates G Contracting, LLC**
*Certified MBE/DBE Firm*
401 Cooper Landing Road
Suite C-4
Cherry Hill, NJ 08002
m) 609-203-8265
o ) 856-667-2460



November 25, 2019

TO: Austin Siboni
        Ryan Abramow

FROM: Joseph Geromini
CEO, Choates G Construction

RE: Drexel Properties, LLC
34th St. Apartments

**Billing Statement**

Hello Gentleman,

Please accept the attached invoice for the above project.  As mentioned earlier, in order to guarantee the tight schedule required, we have pre-paid all contractors accordingly and purchased all needed product ahead of schedule.  These are contractors I have used for many years and trust completely therefor I took the risk to do so knowing once on site they would not be leaving.

Very much appreciate this partnership.

Thank you for being a superior partner here on this project! Any questions please contact Darrell at 267-978-3040 or myself at 609-203-8265.

Regards,

*Joe    Darrell*

Joe Geromini
Darryl Choates

Choates G. Contracting, LLC.
401 Cooper Landing Road
Suite C-4 Cherry Hill, NJ 08002
T: 267-978-3040 / email: dchoatesgc@yahoo.com



|  | | PROJECT COST | MOBILIZATION | INVOICE #1 | INVOICE #2 |
|---|---|---|---|---|---|

**Contractor: CHOATES**

| | | PROJECT COST | MOBILIZATION | INVOICE #1 | INVOICE #2 |
|---|---|---|---|---|---|
| Base bid GC work | $ | 95,100.00 | 12000 | 40000 | 20000 |
| Wood floor re-finishing | $ | - | | | |
| Ceramic Tile & Cortec | $ | 57,680.00 | 5500 | 30000 | |
| Kitchen cabinets & countertops | $ | 36,000.00 | 15000 | 10000 | |
| Plumbing | $ | 84,270.00 | 10000 | 20000 | 10000 |
| Plumbing Fixtures | $ | - | | | |
| HVAC | $ | 25,500.00 | 5000 | 15000 | |
| Electrical | $ | 50,900.00 | | 30000 | 5000 |
| Fire Protection | $ | 12,230.00 | 2000 | | 10000 |
| | $ | 361,680.00 | | | |
| | | | | | |
| | | | | | |
| **Total Price** | | **$345,255** | **($51,789)** | **($150,000)** | **($45,000)** |
| | | | | | |

**THIS INVOICE #1 AMOUNT DUE $45000**
**WIRE TRANSFER TO:**
**Choates G Contracting llc**
**Philadelphia Federal Credit Union**
**Account 906927**
**Routing 236084298**
**Ein 83-1406201**

# EXHIBIT 4



October 18, 2019

TO: Steve Vangeri

     Project Manager
     L2i Construction

FROM:  Joseph Geromini
       CEO, Choates G Construction

RE: Drexel Properies,LLC
34th St. Apartements

Please accept the attached final bid and scope of work for the above.
Per the verbal award, we will begin our planning immediately.  Once we have the Award
Letter we shall begin the permit acquisition and start-up in good faith as we await the
Agreement.

    BID:             $ 319,680.00

    TAX:            $ 25,575.00

    TOTAL:       **$ 345,255.00**

    AGREED 15 PERCENT MOBILIZATION PAYMENT MADE IN ADVANCE:

        **$ 51,789.00**

    WIRE TRANSFER TO:

Choates G Contracting LLC
Philadelphia Federal Credit Union
Account: 906927
Routing: 236084298
EIN: 83-1406201

# EXHIBIT 5

**From:** Duane. Quamina <duane.choates@gmail.com>
**Sent:** Wednesday, February 19, 2020 12:11 PM
**To:** Ryan Abramow; Austin Siboni
**Cc:** Darrell Choates; Darrell Choates; Yenis Martinez; Valeri Choates Project Manager; Zerick
**Subject:** INVOICES - REQUEST FOR PAYMENT
**Attachments:** 42nd St INVOICE FINAL #2 2.19.pdf; 42nd St CHANGE ORDER FINAL 2.19.pdf; DREXEL
INVOICE FINAL #4 2.19.pdf; PROPERTY MANAGEMENT FINAL 2.19.pdf

Ryan and Austin:

I hope all is well with you guys. I have attached 4 separate invoices for payment. The total of all the invoices together is $96,000.00. We need to receive payment in order to keep the projects on track and moving forward.

Please remit payment upon receipt of these invoices.

Sincerely,
Rev. Duane A. Quamina
On Behalf of Darrell Choates, Sr.

--



**Rev. Duane A. Quamina, COO**
**Choates G Contracting, LLC**
**Certified MBE/DBE firm**
**401 Cooper Landing Road, Suite C4**
**Cherry Hill, NJ 08002**
**PO Box 46313 Philadelphia PA 19160-6313**
**www.dchoates.com**
**NJ Office: 856-667-2460**
**PA Office: 267-978-3040**
**Direct: 215-651-0229**

**CHOATES NAMC AWARD WINNER OF 2011**



**CHOATES BEST OF PHILLY AWARD WINNER 2014 & 2016**



*This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail*

*from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. Thank you.*

*- Please consider the environment before printing this email.*



**Contractor: CHOATES** .                    **Paid to date $249,242.00**

| | | Unit 407 | Unit 405 |
|---|---|---|---|
| Mobilization | Mobilization | 100% | 100% |
| Demolition | Mobilization | 70% | 100% |
| Framing | Mobilization | 20% | 80% |
| Plumbing Rough | Mobilization | 20% | 20% |
| Electrical Rough | Mobilization | 20% | 20% |
| Hvac | Mobilization | 20% | 20% |
| Fire protection | Mobilization | 20% | 20% |
| Insulation | Mobilization | 20% | 20% |
| Drywall | Mobilization | 20% | 20% |
| Taping/Spackle | Mobilization | 20% | 20% |
| Sanding | Mobilization | 20% | 20% |
| Painting | Mobilization | 20% | 20% |
| Door installation | Mobilization | 20% | 20% |
| Bathroom Tile install | Mobilization | 20% | 20% |
| Bathroom tub install | Mobilization | 20% | 20% |
| Bathroom toleit install | Mobilization | 20% | 20% |
| Bathroom Shower Install | Mobilization | 20% | 20% |
| Bathroom Vanities install | Mobilization | 20% | 20% |
| Plumbing finishes | Mobilization | 20% | 20% |
| Electrical/Lighitng finishes | Mobilization | 20% | 20% |
| Flooring finishes | Mobilization | 20% | 20% |
| Cabinets Purchase | Mobilization | 20% | 20% |
| Vanities Purchse | Mobilization | 20% | 20% |
| Dumping/Hauling | Mobilization | | $1,500.00 |
| Engineering MEP's | Mobilization | | $8,000.00 |
| Construction Management | Mobilization | | $10,000.00 |
| Permit Fees | Mobilization | | $14,000.00 |

**TOTAL**                    Payment Due :     $33,500.00



**Paid to date: $270,428.00**

**Contractor: CHOATES**

| | | Unit 536 | Unit 534 | Unit 532 | Unit 530 | Unit 528 |
|---|---|---|---|---|---|---|
| Construction Management | Mobilization | 20% | 90% | 90% | 20% | 20% |
| Mobilization | Mobilization | 100% | 100% | 100% | 100% | 100% |
| Demolition | Mobilization | 30% | 100% | 90% | 20% | 20% |
| Framing | Mobilization | 35% | 100% | 100% | 20% | 20% |
| Plumbing Rough | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Electrical Rough | Mobilization | 30% | 100% | 100% | 20% | 20% |
| Hvac | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Fire protection | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Insulation | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Drywall | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Taping/Spackle | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Sanding | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Painting | Mobilization | 20% | 100% | 100% | 20% | 20% |
| Door installation | Mobilization | | 90% | 90% | | |
| Window Demo | Mobilization | | 100% | 100% | | |
| Window installation | Mobilization | | 80% | 80% | | |
| New Bathroom Additions (6) | Mobilization | | 100% | 100% | | |
| Bathroom Tile Install | Mobilization | | 50% | 50% | | |
| Bathroom Tub Install | Mobilization | | 100% | 100% | | |
| Bathroom Toleit Install | | | | | | |
| Bathroom Shower Base Unit Install | | | | | | |
| Bathroom Vanities Install | | | | | | |
| Awning deposit | | | | | | |
| Plumbing finishes | . | | . | | | |
| Electrical/Lighitng finishes | . | | . | | | |
| Flooring finishes | | | | | | |
| **SUB TOTAL** | | | | | $47,000.00 | |
| Cabinets Purchase | | | | | | |
| Vanities Purchse | | | | | | |
| Dumping/Hauling | | | | | | |
| Permit Fees | | | | | $10,000.00 | |
| Engineering Electrical MEP | | | | | | |
| Admin Fee | | | | | | |

All drawings: not to code

**TOTALS:**     Due to dat   $57,000.00



**Contractor: CHOATES**      **CHANGE ORDER #1**

**407 S 42nd Street**

| | | |
|---|---|---|
| Demolition | | |
| Framing | | |
| Plumbing Rough | | |
| Electrical Rough | | |
| Hvac | | |
| Fire protection | | |
| Insulation | | |
| Drywall | | |
| Taping/Spackle | | |
| Sanding | | |
| Painting | | |
| Door installation | | |
| Removal of Plaster Walls | Labor | $2,500.00 |
| | Dumping Fee | $1,500.00 |
| Bathroom Tile install | | |
| Bathroom Tub install | | |
| Bathroom Toleit install | | |
| Bathroom Shower Install | | |
| Bathroom Vanities install | | |
| Bathroom Sink Replace and Repair | | |
| Plumbing finishes | | |
| Electrical/Lighitng finishes | | |
| Trash Removal (3 Weeks) | | |
| Flooring finishes | | |
| Cabinets Purchase | | |
| Vanities Purchse | | |
| Dumping/Hauling | | |
| Engineering MEP's | | |
| Construction Management | | |
| Permit Fee | | |

**TOTAL**      Payment Due :      $4,000.00



**Contractor: CHOATES**

| | Unit 528 Apt 1 | Unit 530 Apt 3 | 42nd Street |
|---|---|---|---|
| Demolition | | | |
| Framing | | | |
| Plumbing Rough | | | |
| Electrical Rough | | | |
| Hvac | | | |
| Fire protection | | | |
| Insulation | | | |
| Drywall | | | |
| Taping/Spackle | | | |
| Sanding | | | |
| Painting | | | |
| Door installation | | | |
| Bathroom Tile install | | | |
| Bathroom tub install | | | |
| Bathroom toleit install | | | |
| Bathroom Shower Install | | | |
| Bathroom Vanities install | | | |
| Bathroom Sink Replace and R | $300.00 | $300.00 | |
| Plumbing finishes | | | |
| Electrical/Lighitng finishes | | | |
| Trash Removal (3 Weeks) | | | $900.00 |
| Flooring finishes | | | |
| Cabinets Purchase | | | |
| Vanities Purchse | | | |
| Propertry Showing/Leasing | | | No Charge |
| Dumping/Hauling | | | |
| Engineering MEP's | | | |
| Construction Management | | | |
| Monthly Admin Fee | | | $300.00 |
| Permit Fee | | | |
| **TOTAL** | | Payment Due : | $1,800.00 |

# EXHIBIT 6

**Darrell Choates**
120 Peace Lane
Glassboro, NJ 08028
Tel: 267-978-3040

*Filed and Attested by the
Office of Judicial Records
07 NOV 2018 12:37 pm
A. SILIGRINI*

**MAJOR JURY**

---

| | | |
|---|---|---|
| DARRELL CHOATES | : | COUT OF COMMON PLEAS |
| 120 Peace Lane | : | PHILADELPHIA COUNTY |
| Glassboro, NJ 08028 | : | |
| | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. |
| Veronica Tucker | : | |
| 519 Jason Drive | : | |
| Southampton, PA 18966 | : | |
| and | : | |
| Margaret (Peggy) House | : | |
| 519 Jason Drive | : | |
| Southampton, PA 18966 | : | |

---

## NOTICE TO DEFEND NOTICE

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral and Information Service
1101 Market St., 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
1101 Market St., 11th Piso
Filadelfia, Pennsylvania 19107
(215) 238-6333

Case ID: 181100684

**Darrell Choates**
120 Peace Lane
Glassboro, NJ 08028
Tel: 267-978-3040                                    **MAJOR JURY**

---

DARRELL CHOATES           :      COUT OF COMMON PLEAS
120 Peace Lane            :      PHILADELPHIA COUNTY
Glassboro, NJ 08028       :
                          :      CIVIL ACTION
vs.                       :
                          :      NO.
Veronica Tucker           :
519 Jason Drive           :
Southampton, PA 18966     :
and                       :
Margaret (Peggy) House    :
519 Jason Drive           :
Southampton, PA 18966     :

---

## CIVIL ACTION COMPLAINT

### PARTIES

1.      The Plaintiff, Darrell Choates is a citizen and resident of the State of New Jersey with an address located at 120 Peace Lane, Glassboro, NJ 08028.

2.      Defendant, Veronica Tucker is a citizen and resident of the Commonwealth of Pennsylvania with an address located at 519 Jason Drive, Southampton, PA 18966.

3.      Defendant, Margaret (Peggy) House is a citizen and resident of the Commonwealth of Pennsylvania with an address located at 519 Jason Drive, Southampton, PA 18966.

4.      At all times relevant hereto, all transactions and occurrences occurred within the State of Pennsylvania and within Philadelphia County, Pennsylvania.

Case ID: 181100684

## <u>COUNT I</u>
## BREACH OF CONTRACT

5.      Plaintiff hereby incorporated all preceding paragraphs herein by reference as though more fully set forth at length.

6.      Defendants Veronica Tucker by and through her agent and representative Margaret (Peggy) House owned the following properties. The below listed properties were to be purchased by Plaintiff and are currently under a lease purchase agreement (**See Exhibit A**).

|     |                      |           |
| --- | -------------------- | --------- |
| a)  | 6176 Newtown Avenue  | $125,000  |
| b)  | 312 Devereaux Avenue | $125,000  |
| c)  | 1523 Rosalie Street  | $120,000  |
| d)  | 4805 E. Alcott Street| $ 75,000  |
| e)  | 2710 Stevens Street  | $120,000  |
| f)  | 3312 Disston Street  | <u>$155,000</u> |
|     |                      | $720,000  |

7.      Defendants accepted consideration from Plaintiff in the amount of $5,000 for the property for a total of $30,000.

8.      Plaintiff paid out of pocket an addition $200,000 for repairs, renovations and the upkeep of the properties.

9.      Plaintiff initially agreed to a balloon payment to pay Defendants in full for the properties on a date specific.

10.     Plaintiff was unable to make said balloon payment on the date specific.

11.     Defendants verbally amended lease purchase agreement and agreed to accept monthly payments instead.

12.     Plaintiff has been making payments on a monthly basis to Defendants.

13.     Defendants failed to live up to the terms of the amended lease purchase agreement.

Case ID: 181100684

14.    Defendants have continuously harassed plaintiff, his tenants by attempting to change the locks and recently his business associates (**See Exhibit B**).

15.    Defendants have called the police on plaintiff and his tenants on more than one occasion to have Plaintiff tenants removed or evicted from the properties (**See Exhibit C**).

16.    Plaintiff was left with no other alternative but to file a Complaint with the Pennsylvania Human Relations Commission, due to the aforementioned harassment and the racist and bigoted remarks made to Plaintiff's business associate (**See Exhibit D**).

17.    Defendants also attempted to have Plaintiff's tenants evicted from each of the properties under false pretenses in Philadelphia Municipal Court and is attempting to do so again. The Municipal Court Judge Craig M. Washington ruled that the Court lacked jurisdiction to decide the validity of the lease purchase agreement for 312 Devereaux Avenue. Judge Washington's, ruling prompted the Defendants to withdrawn the other Complaints file with Municipal Court prior to Judge Washington ruling in those cases (**See Exhibit E**).

18.    As a result of Defendants actions, Plaintiff has suffered damages, including contractual damages, as well as incidental and consequential damages, and has been forced to incur legal expenses in an effort to end the harassment.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief and that judgment be entered in his favor and against the Defendants in the amount of nine hundred and fifty thousand dollars ($950,000), exclusive of interest and the cost of filing this complaint jointly and severally.

## <u>COUNT II</u>
## UNJUST ENRICHMENT

19.    Plaintiff hereby incorporated all preceding paragraphs herein by reference as though more fully set forth at length.

20.     As a result of the conduct described above, Defendants has been unjustly enriched at the expense of Plaintiff by refusing to honor the lease purchase agreement with Plaintiff.

21.     Defendants should be required to disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future for rental payment or reselling the properties at a higher cost due to the repairs and renovations, at the expense of Plaintiff, because they refuse to honor the lease purchase agreement, and a constructive trust should be imposed thereon for the benefit of Plaintiff.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief and that judgment be entered in his favor and against the Defendants in the amount of nine hundred and fifty thousand dollars ($950,000), exclusive of interest and the cost of filing this complaint jointly and severally.

<div align="center">

**COUNT III**
**CONVERSION**

</div>

22.     Plaintiff hereby incorporated all preceding paragraphs herein by reference as though more fully set forth at length.

23.     Plaintiff has requested that the Defendants live up to the lease purchase agreement.

24.     Plaintiff has made payments towards the upkeep of these properties which totals more than $200,000.

25.     Defendants have taken Plaintiff earnest monies paid in consideration of the lease purchase of said properties and converted the same to their own use, and have refused to return same or honor the lease purchase agreement.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief and that judgment be entered in his favor and against the Defendants in the amount of nine hundred and fifty thousand dollars ($950,000), exclusive of interest and the cost of filing this complaint jointly and severally.

## COUNT IV

## DECLARATORY AND INJUNCTIVE RELIF

26.     Plaintiff hereby incorporated all preceding paragraphs herein by reference as though more fully set forth at length.

27.     Plaintiff seek declaratory and injunctive relief prohibiting the Defendants from further harassing, his tenants or business associates until this matter is resolved in a court of law.

Pa.R.C.P 1531(a) states in pertinent part:

A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief and that judgment be entered in his favor and against the Defendants in the amount of nine hundred and fifty thousand dollars ($950,000), exclusive of interest and the cost of filing this complaint jointly and severally.

## COUNT V
## PUNITIVE DAMAGES

28.     Plaintiff hereby incorporated all preceding paragraphs herein by reference as though more fully set forth at length.

29.     The acts and omissions of Defendant with respect to the continuous harassment of Plaintiff and Plaintiff's tenants which continue to mount at the time of this filing of the Amended Complaint were and are outrageous and/or undertaken with reckless indifference to the rights and interest of Plaintiff

30.     Plaintiff is entitled to the maximum award of punitive damages allowed by law.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief and that judgment be entered in his favor and against the Defendants in the amount of nine hundred and fifty thousand dollars ($950,000), exclusive of interest and the cost of filing this complaint jointly and severally.

Respectfully submitted,

By: _____

Darrell Choates,
Plaintiff, Pro Se

Dated: November 7, 2018

## <u>VERIFICATION</u>

Plaintiff Darrell Choates verifies that the statements made in the foregoing pleading are true and correct to the best of Plaintiff's knowledge, information and belief. The undersigned understands the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Darrell Choates,
Plaintiff, Pro Se

# EXHIBIT 7



October 25, 2019
TO: Steve Vangeri
Project Manager
L2i Construction

FROM: Joseph Geromini
CEO, Choates G Construction

RE: Drexel Properties, LLC
34th St. Apartments

Invoice #2


Hello Steve,

Please accept the attached invoice for the above project.  In order to meet the high quality of service, meet the demands of scheduling but mostly guarantee we had the best team put together, we did some things a little unorthodox.  We have paid in full all the supplies needed for the total job up to 80 percent of scheduled and planned.  Just a small bit remaining. We have pre-paid all contractors accordingly.  These are contractors I have used for many years and trust completely therefor I took the risk to do so knowing once on site they would not be leaving.

Thank you for being a superior partner here on this project! Any questions please contact Darrell at 267-978-3040 or myself at 609-203-8265.



Regards,

*Joe    Darrell*

Joe Geromini
Darryl Choates

<div align="center">
Choates G. Contracting, LLC.
401 Cooper Landing Road
Suite C-4 Cerry Hill, NJ 08002
T: 267-978-3040 / email: dchoatesgc@yahoo.com
</div>



**CHOATES**
GENERAL CONTRACTING, INC.

**Contractor: CHOATES**

| | | PROJECT COST | MOBILIZATION INVOICE #1 | INVOICE #2 | REMAINING |
|---|---|---|---|---|---|
| Base bid GC work | $ | 95,100.00 | 12000 | 40000 | |
| Wood floor re-finishing | $ | - | | | |
| Ceramic Tile & Cortec | $ | 57,680.00 | 5500 | 30000 | |
| Kitchen cabinets & countertops | $ | 36,000.00 | 15000 | 10000 | |
| Plumbing | $ | 84,270.00 | 10000 | 20000 | |
| Plumbing Fixtures | $ | - | | | |
| HVAC | $ | 25,500.00 | 5000 | 15000 | |
| Electrical | $ | 50,900.00 | | 30000 | |
| Fire Protection | $ | 12,230.00 | 2000 | | |
| | $ | 361,680.00 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Total Price** | | $345,255 | ($49,500) | ($145,000) | $150,755 |

**THIS INVOICE #1 AMOUNT DUE $150,000.00**
**WIRE TRANSFER TO:**
**Choates G Contracting llc**
**Philadelphia Federal Credit Union**
**Account 906927**
**Routing 236084298**
**Ein 83-1406201**

| From: | Joseph Geromini <ackfog@aol.com> |
| --- | --- |
| Sent: | Monday, December 23, 2019 5:13 AM |
| To: | austin@lehighproperties.com; rlabramow@gmail.com |
| Cc: | dchoatesgc@yahoo.com; Ashley91102@icloud.com; ackfog@aol.com |
| Subject: | Invoice #1 |
| Attachments: | 42ndInvoice #1.xlsx |

Please find our first invoice attached. Numbers broken down. All deposits were paid electronically this morning. We are having all plumbing, electric, HVAC and lumber delivered
today and tomorrow. All contractors for such have been deposited. Unlike 34th, we completed demo so these folks will not be leaving the site once they start.

Deposit $162,200 transferred as specified. Thanks in advance. Your payment on receipt allows us to pay cash on deliver/in advance allowing us an additional 3 percent thus keeping our
costs to you lower So thanks!

Talk soon. Happy holidays!

Joseph Geromini
CEO
**Choates G Contracting, LLC**
*Certified MBE/DBE Firm*
401 Cooper Landing Road
Suite C-4
Cherry Hill, NJ 08002
m) 609-203-8265
o ) 856-667-2460

1



# EXHIBIT 8



Listen Live • Here and Now



| URBAN PLANNING | CHANGING COMMUNITIES | PHILADELPHIA | REAL ESTATE |

**CORONAVIRUS PANDEMIC**

# COVID didn't stop Philly's construction boom, but signs point to slowdown in 2021

By Ryan Briggs , Taylor Allen · December 24, 2020



Construction at 1324 Frankford Avenue in Fishtown. (Kimberly Paynter/WHYY)

Philadelphia's real estate market survived 2020 — but analysts and developers are holding their breath for what comes next.

Despite blows to the U.S. economy, home values in the city crept up and rental prices dipped only marginally, according to analysts. The pandemic briefly brought new construction to a grinding halt, but overall activity remained comparable to pre-COVID times, largely thanks to projects that were already in the pipeline.

But experts that monitor development trends say the future for dense cities like Philadelphia remains something of a question mark heading into 2021.

"The pandemic may have a negative impact on where people make their next housing investment," said Andrew Svekla, manager of the Delaware Valley Regional Planning Commission's Office of Smart Growth. "We're wondering if it's a pause or a fundamental shift."

Analysis of data from the city's Department of Licenses & Inspections showed a tumultuous year for construction activity, marked by COVID-related shutdowns, recovery, and possible anxiety about the future of the Philadelphia 10-year property tax abatement.

The initial pandemic shutdown is reflected in the fact that just four new construction permits were authorized during a one month period between March and April, down from 122 during the same period a year prior.

But the halt was temporary. Construction was one of the first occupations allowed to return to work. By August, new construction permits skyrocketed to higher levels than those seen before the pandemic.

Svekla said that reflected both pent-up demand from the shutdown and projects moving forward that were already planned and financed.

"When a developer has lined up all that financing, there's a certain amount of momentum," he said. "And there are people thinking maybe we might return to normalcy soon, so let's build."

## Related Content

**PLANPHILLY    URBAN PLANNING**

**These Black developers want to show by example how to make it in a difficult, expensive industry**

*8 months ago*

Leo Addimando, president of the Building Industry Association of Philadelphia, said the late-year surge also likely owed to anxiety about a deadline that had been in place to reduce the city's 10-year tax abatement on new construction.

"Anything above normal permitting levels would be about the looming change to the tax abatement," said Addimando, who represents developers. "I would be very curious to see if it returns to normal levels in 2021."

Beginning at the end of this year, the property tax break was slated to be gradually reduced in value by about half. But eligibility for the perk is tied to the date of permit issuance, not groundbreaking.

Ultimately, council decided earlier this month to delay that reduction — but potentially hundreds of developers may have preemptively secured permits hoping to take advantage of the full existing abatement.

## 'Not just a place to live'

Overall, the city mirrored, and even outperformed, some trends seen nationally.

Svekla said that while high-cost markets like New York and San Francisco had seen precipitous drops in rental costs, most estimates pegged Philly with only single-digit percentage point declines.

"The exodus has been more muted here," he said.

The picture nationally is somewhat of a paradox.

While millions of Americans were dealt lasting economic blows by the pandemic, the housing market surged across the U.S. Greased by historically low-interest rates and buyers looking for

larger work-from-home quarters, house sales hit a 14-year high in August. The increase has driven up both housing prices and rental costs in the process.

While the pandemic was devastating for many already living in poverty, white-collar workers that could operate remotely saw their lives change but their incomes preserved. Addimando said Philly had even benefited as workers in other high-cost cities became increasingly untethered from physical offices.

"A lot of people were coming to Philly from other ZIP codes," he said. "It's turning into a bedroom community for D.C. or New York City."

Kevin Gillen, a real estate economist at Drexel University, said he was shocked initially by how well the housing market was doing. But looking back, he said it makes sense.

"Your home is not just a place to live and your office," he said. "It's now your homeschool, your gym, spa, restaurant, and theater."

**Related Content**

PLANPHILLY   URBAN PLANNING

**City Council creates Strawberry Mansion conservation district — a first for an 'underrepresented' community**

*8 months ago*

## Winners and losers

Permitting data shows new single-family housing continuing to sprout in neighborhoods increasingly farther from Center City, a trend likely driven in part by urban homebuyers looking to upsize. Places like Brewerytown and Strawberry Mansion saw an uptick in construction activity in 2020, compared to last year.

Akira Rodriguez, a city and regional planning professor at the University of Pennsylvania, said that the ring of neighborhoods around the city's downtown — many with high poverty rates, many historically with a higher number of Black residents — offered developers cheaper land for new projects.

"All the homes in Philadelphia are pretty old, but the ones in Black neighborhoods are going to be old and disinvested," she said. "Because of that, those areas are pretty ripe for speculation and gentrification."

The new development pressure was noticed by people like Tonnetta Graham of the Strawberry Mansion Community Development Corporation, a group that supported a zoning overlay designed to blunt the impact of new development. She said she saw opportunities to revitalize vacant properties in the neighborhood, but wants longtime residents to be involved in the process while preserving the neighborhood's character.

"You can't plan in the neighborhood without the neighborhood," she said.

Some niche types of construction also did well during the pandemic, said Robert Fahey, a vice president with the commercial real estate firm CBRE.

Philly has a strong anchor in hospitals and educational institutions that helped attract more life sciences development, sparking millions in development in places like University City and the Navy Yard. Storage and logistics warehousing also boomed, owing to consumer buying habits during the pandemic.

"Everyone is trying to buy science buildings and cold storage warehouses," Fahey said. "There is more frozen food than produced at any time in history."



Brownstones on the 3100 block of Diamond Street in Philadelphia's Strawberry Mansion neighborhood. (Kimberly Paynter/WHYY)

Some parts of the city's real estate market, though, were devastated in 2020 — particularly what was considered an already weak commercial office sector. Fahey said financing for large format tower projects generally had gotten tougher, and for conventional multi-tenant office towers even more so.

"There will be less demand for office space. It's a given. People just don't feel safe," Fahey said. "The winners will be the newest buildings, with the best locations, the best product, and the best ventilation systems."

He predicted that a wave of conversions to apartment or hotel use is likely for older office buildings. Gillen said he too doesn't foresee many new projects for office space unless it's a big tenant with a lengthy lease.

While he said It's difficult to know what will happen to the commercial sector until at least the spring, when vaccinations are expected to be more widespread, Gillen wasn't positive people will return to offices even after the pandemic is over.

"The big unknown variable for 2021 is what will happen to our office sector, not only here in Philadelphia, but nationally," he said.

Ben Connors, president of General Building Contractors Association, which mainly represents commercial contractors, was also less optimistic.

"We know the trends right now are putting us in the wrong direction," he said.

The pandemic triggered an economic recession that Connors said will take time to be fully felt in his industry — but he predicted a slowdown in construction in mid-to-late 2021.

"Construction has some benefits in that we typically lag an economic recession by 12 to 18 months," Connors said. "This is a little bit different, so we do think there's potentially a slow down coming."

On top of project delays because of the pandemic shutdown, Connors also said that continuing social distancing measures have impacted the projects that did get off the ground, as fewer people on-site means less efficiency. He too was concerned about planned reductions to the tax abatement. Even with the delay, he worries that any incentives taken away are going to result in less development.

"Generally speaking, if you remove incentives and you increase costs, you are disincentivizing that type of activity," Connors said.

**Related Content**

**PLANPHILLY   URBAN PLANNING**

**Thousands of new homes in development as Philly economy restarts**

*1 year ago*

## 'I think it will all come back'

Over the past decade-and-a-half, Philadelphia's downtown development has benefited from both an undersupply of student housing for the city's many universities and retiring suburban

Baby Boomers looking to downsize to urban dwellings after their children leave the nest. Addimando said that all evaporated during the quarantine.

The BIA president thinks the attributes of the city that attracted both young students and retirees will return, but he worries about the lasting damage nearly a year of being housebound might do to the city's previously robust apartment sector.

"Density is not good in a pandemic world. You go to dense places for all the stuff that comes with it — it's been totally squashed," he said. "I'm optimistic. I think it will all come back. But will people still want to live in a small apartment?"

In Philly, it's still unclear if any of the trends directly linked to life during a pandemic will cause permanent change, Svekla, of the Delaware Valley Regional Planning Commission, said. But he notes the very real financial strains put on local governments or public transit systems could harm quality of life in cities for years to come. Lasting transit service cuts or derailed expansion plans, for example, are inherently bad for cities and dense towns, he said.

Still, Svekla said he was optimistic that the "death of cities" predicted by some had been overblown. Some, like claims that a mass exodus to the suburbs would be imminent because of the pandemic, so far haven't held up.

"We have a lot of anecdotal data and stories of people looking for bigger homes and yards," he said. "But I'm not sure there's much evidence."



### Subscribe to PlanPhilly

Our weekly newsletter delivers original reporting on the people, places and things that make Philly.

```
Enter your Email here
```

Subscribe

**Share this**  

**Brought to you by PlanPhilly**

**PlanPhilly**

In-depth, original reporting on housing, transportation, and development.

---

**Part of the series**

**Coronavirus Pandemic**

View the series

---

**You may also like**

PLANPHILLY    URBAN PLANNING

**As building boom continues in West Philly, Black Bottom Tribe fights for a sign of the community they lost**

*1 week ago*

 Listen  6:04

URBAN PLANNING

**Delco wants to acquire Don Guanella property via eminent domain for use as a park**

*2 months ago*

**PLANPHILLY   URBAN PLANNING**

**Our Space**

**Indoor dining is back, but let's not forget the lessons of eating in the streets**

*2 months ago*

 Listen  4:42

---

**About Ryan Briggs**

Read more

 @rw_briggs   ✉ rbriggs@whyy.org

**About Taylor Allen**

Read more

 @TaylmanAllen   ✉ tallen@whyy.org

**Top Stories**

**COVID-19 VACCINES**

**Trusted vaccine messengers have their work cut out for them**

**KEYSTONE CROSSROADS**

**Bucks tweaks COVID guidance to schools after outcry over health commissioners' emails**

**COMMUNITY**

**Haitians in N.J. and Del. hope to help family in wake of massive earthquake**

---

Want a digest of WHYY's programs, events & stories? Sign up for our weekly newsletter.

Enter your Email here

Subscribe

**2%**  Together we can reach 100% of WHYY's fiscal year goal

Donate $\rightarrow$

Learn about WHYY Member benefits
$\rightarrow$

Ways to Donate

**WHYY provides trustworthy, fact-based, local news and information and world-class entertainment to everyone in our community.**

**WHYY offers a voice to those not heard, a platform to share everyone's stories, a foundation to empower early and lifelong learners and a trusted space for unbiased news. Learn more about our Social Responsibility Program. It's how we live.**

**Contact Us**

**Philadelphia**             **Delaware**

215.351.1200                302.516.7506

talkback@whyy.org           talkback@whyy.org

## Our Programs

| | |
|---|---|
| A.I. Nation | PlanPhilly |
| Billy Penn | The Pulse |
| Check, Please! Philly | Radio Times |
| Community Conversations | Real Black History |
| Consider This | Schooled |
| Delishtory | StateImpact |
| Eleanor Amplified | Things To Do |
| Flicks | Voices in the Family |
| Fresh Air | Women 100 |
| House Concert Series | You Oughta Know |
| Keystone Crossroads | Young Creators Studio |
| Movers & Makers | Your Democracy |
| On Stage at Curtis | |

## Inside WHYY

About

Employment

Sounding Board

N.I.C.E. Initiative

Contact Us

Sponsorship

Directions

FCC Public Files

## Follow Us

   

## Sign up for a Newsletter →

---

© WHYY 2021    **Privacy Policy**        **Terms of Use for WHYY.org**

WHYY is partnered with

UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:   Choates G. Contracting, LLC | Case No.  21-  13085-ABA          |
| | Hon.  Andrew B. Altenburg, Jr., |
| Debtor. | Chapter 11 (Subchapter V Small Business) |

## PROOF OF SERVICE

This is to certify that I have this 19th day of August, 2021, served the foregoing Creditors

Philly Properties GP, LLC and Drexel Properties GP, LLC's Objections to Debtors Plan of

Reorganization via the Court's electronic filing system (ECF) upon the following:

Bradley K. Sclar
Five Greentree Center, Suite 104
525 Route, 73 North
Marlton, NJ 08053

Daniel L Reinganum
McDowell Law, PC
46 West Main Street
Maple Shade, NJ 08052

Trustee
Douglas S. Stranger
Flaster/Greenberg
646 Ocean Heights Avenue
Linwood, NJ 08221

U.S. Trustee
US Dept of Justice
Office of the US Trustee
One Newark Center Ste 2100
Newark, NJ 07102

Jeffrey M. Sponder
Office of U.S. Trustee
One Newark Center
Newark, NJ 07102

**SILVERANG ROSENZWEIG
& HALTZMAN, LLC**

By:    /s/  William C. Katz
        William C. Katz, Esquire
        Mark S. Haltzman, Esquire
        Attorney ID Nos. 026451983/007502007
        *Attorneys for Creditor(s):*
        *Drexel Properties GP, LLC and*
        *Philly Properties GP, LLC*