Daniel L. Reinganum
McDowell Law, PC
46 W. Main Street
Maple Shade, NJ 08052
856-482-5544 / DanielR@McDowellLegal.com
*Attorneys for Choates G. Contracting, LLC, Chapter 11 Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: | Case No.: 21-13085-ABA |
| **Choates G. Contracting, LLC** | Chapter No.: 11 |
| | Adv. No. 21-13085-ABA |

**SUPPLEMENTAL CERTIFICATION OF DARRELL CHOATES REGARDING PROPOSED SALE AND BUYER'S PROPOSED FINANCING RE: 122 DANTON LANE, MULLICA HILL, NJ**

Darrell Choates, CEO of Choates G. Contracting, LLC, Chapter 11 Debtor, does hereby certify as follows:

1. I am the principal of Choates G. Contracting, LLC ('Debtor' or 'the Debtor') and I have personal knowledge of the statements set forth herein.

2. I make this supplemental Certification in support of the Debtor's motion to approve the contract for sale of real property located at 122 Danton Lane, Mullica Hill, New Jersey 08062 (the 'Property' or the 'Real Property') (the 'Motion').

**SALE AND FINANCING**

3. As set forth in the Motion, the proposed purchaser is an insider – my brother, Zerrick Balckom (the 'Buyer' or 'Proposed Purchaser').

4. Mr. Balckom executed a certification in support of the Motion and provided evidence of his ability to complete the transaction.

5. His financial ability to complete is through a combination

of sources:

    a. The $20,000 deposit presently with McDowell Law, PC. (said deposit was provided in the form of a cashier's check from funds originally withdrawn from the account of Personal Home Care C&G, LLC, a company of which myself and Christopher Dutcher and Mr. Balckom are owners);

    b. A signed letter from Christopher Dutcher noting Mr. Dutcher's willingness to provide an additional $100,000 towards the down payment for the Property, and supplying a Discover Savings Account statement in the name of Christopher Dutcher or Darrell K Choates showing sufficient funds to supply this additional $100,000 towards the down payment; and

    c. A signed letter from the Mortgage Warehouse, LLC certifying that the Proposed Purchaser is pre-approved for a conventional loan with maximum purchase price of $600,000 and maximum loan amount of $480,000, to be secured by a first position mortgage. No income documentation is required for the loan. This letter even further states that the loan approval is not affected by the Buyer obtaining a potential loan of up to $100,000 (i.e. from Mr. Dutcher).

6. By way of additional disclosures regarding the relationship of the parties involved:

    i. I am an owner of Personal Care Home C&G, LLC, as is the Zerrick Balckom, the Proposed Purchaser, and Christopher Dutcher.

    ii. Personal Care Home C&G, LLC supplied the funds for the $20,000 deposit.

    iii. Mr. Dutcher became an owner of Personal Care Home C&G, LLC in the last thirty (30) days. As a result of that partnership, my name was added to the Discover Savings Account in the last thirty (30) days as well.

    iv. Accordingly, Mr. Dutcher is a business partner of mine and a business partner of the Proposed Purchaser.

      v. However, other than the personal connections that I, myself, have with Mr. Dutcher, Mr. Dutcher has no connections with the Debtor.

     vi. The proposed terms of Mr. Dutcher's loan to the Proposed Purchaser, as I understand them, are that the loan will be a personal, unsecured loan with no immediate repayment obligations.

7. While the Proposed Purchaser intends to use a mortgage loan in order to purchase the Property, the Contract to Purchase/Sell Real Estate does not contain a mortgage contingency.

8. The Contract to Purchase/Sell Real Estate also contains a provision that in the event the Proposed Purchaser is unable to complete the transaction, any deposit funds will be forfeited by the Proposed Purchaser.  Instead of these funds then being released to the Debtor, as they would be in a standard real estate sale or even a typical Chapter 11 sale, the deposit funds must be turned over to the Sub-Chapter V Trustee for distribution to creditors and are not credited against the Debtor's ongoing plan payment obligations.

9. In other words, the non-refundable nature of the deposit(s) protect the Debtors' creditors in the event that the proposed transaction is not consummated.

10.   It is both the Debtor and the Proposed Purchaser's desire to consummate this transaction as soon as possible.  However, in order to consummate the transaction there are certain events, outside of the control of the Debtor, which must be completed – notably, title search and records as well as an appraisal ordered by the lender.  This is why the Contract to Purchase/Sell Real Estate contains a longer than normal time to close and the option to extend the closing period upon posting additional non-refundable deposits.

11.   Given the non-refundable nature of the deposit(s), it is not unreasonable for the Proposed Purchaser to want to guard against forfeiting the deposits for reasons which are beyond his control.

I certify the above statements are true under penalty of perjury.

BY: _____  Date:    June 7, 2022
    Darrell Choates
    CEO, Choates G. Contracting, LLC