Daniel Louis Reinganum
McDowell Law, PC
46 W. Main Street
Maple Shade, NJ 08052
856-482-5544 / DanielR@McDowellLegal.com
*Attorneys for Choates G. Contracting, LLC, Chapter 11 Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | Case No.: 21-13085-ABA |
| **Choates G. Contracting, LLC** | Chapter No.: 11 |

### **AMENDED**

Certification of Darrell Choates In Support Of Motion To Approve Sale of 122 Danton Lane, Mullica Hill, New Jersey 08062 Free and Clear of Liens, To Authorize Distribution Of Sales Proceeds, To Void Judgment Of Turn-Key Management Corp. Entered Post-Petition and In Violation of the Automatic Stay, And For Related Relief

Darrell Choates, CEO of Choates G. Contracting, LLC, Chapter 11 Debtor, does hereby certify as follows:

1. I am the principal of Choates G. Contracting, LLC ('Debtor' or 'the Debtor') and I have personal knowledge of the statements set forth herein.

2. I make this Certification in support of the Debtor's motion to sell real property located at 122 Danton Lane, Mullica Hill, New Jersey 08062 (the 'Property' or the 'Real Property') free and clear of liens with liens to attach to proceeds, to authorize the distribution of sales proceeds, and for related relief.

### **PROCEDURAL BACKGROUND**

1

3. Choates G. Contracting, LLC (the 'Debtor') commenced a voluntary Chapter 11 case on April 15, 2021.

4. On October 19, 2022 the Debtor proposed its Second Amended Chapter 11 Small Business Subchapter V Plan (the 'Chapter 11 Plan') by filing same with the Court.  A copy of same is attached as <u>Exhibit A</u>.  *See also Docket No. 76.*

5. The Chapter 11 Plan was confirmed by the Court on December 9, 2021 on a non-consensual basis and the related Order confirming Chapter 11 Plan was entered by the Court on December 22, 2021.  A copy of same is attached as <u>Exhibit B</u>.  *See also Docket No. 118.*

6. Under the Chapter 11 plan, unsecured creditors are to be paid in full.

7. Among other things, the Chapter 11 Plan requires that the Real Property be sold within one-year (1) year of confirmation.

**THE CONTRACT FOR SALE**

8. The Debtor has entered into a contract to sell the Real Property (the '<u>Contract</u>') to Zerrick Balckom.  The Contract and the addendum thereto is attached hereto as '<u>Exhibit C</u>').

9. Among other things, Paragraph 2 of the Contract provides that the property to be conveyed to the Buyer consists of "(a) the land and all buildings, **other improvement and fixtures on the land, if any…" (emphasis added).**

10. See the Contract for all relevant terms, but the most salient features of the Contract are set forth below:

    a. <u>Purchase Price</u>:     $600,000

    b. <u>Deposit</u>:            $20,000.  Non-refundable.  Already provided to Seller's attorney in certified funds.  Currently in the Attorney Trust Account of McDowell Law, PC.

    c. <u>Financing</u>:          Not subject to mortgage

2

contingency.

d. <u>Inspections</u>:        Waived

e. <u>Closing date</u>:       The earlier of:  (a) Ten (10) calendar days following the issuance of a final, binding, and non-contingent mortgage commitment; or (b) August 17, 2022.  However if the failure of Buyer to close by August 17, 2022 is attributable to delays beyond Buyer's control (i.e. title work or appraisal report and mortgage commitment), then Buyer may extend the Closing date by 30 days by paying an additional $10,000 non-refundable deposit.  Closing may be extended twice in this manner.  **\*\* Closing has been extended once in this manner as of the filing of this motion \*\***.

**f.** <u>Realty Commission</u>:  **NONE.**

**g.** <u>Disposition of Deposit(s) if Buyer fails to close in accordance with contract</u>: Buyer forfeits deposits (and extension deposits) and Seller's attorney is required to forward all deposit funds to Douglas Stanger, Sub-V Trustee, for distribution to creditors under the confirmed plan, and not credited against monthly payments due.

11.    The Debtor previously sought Court approval to enter into the Contract, and the Court has authorized the Debtor to enter into the Contract. See "<u>Exhibit D</u>', attached hereto.

12.    Having said this, in seeking approval of the Contract, I was unaware that that any amounts owed against the solar panels attached to the Real Property would be need to be paid in order for the Debtor to transfer the Real Property, or that Sunnova Management, LLC, the finance company for the solar panels would not permit the Buyer to assume the solar panel financing.

13.    It was not my intention to mislead the Court or creditors in any way.  However, City Abstract Title has required that the filed Financing Statement of Sunnova Management be addressed, and Sunnova Management will not

permit the assumption of the financing agreement – insisting on a payoff.

### **VALUE OF THE PROPERTY & FIXTURES ON THE PROPERTY**

14. The Debtor obtained an appraisal of the Property as of March 29, 2022 which valued the Property at $593,000. See 'Exhibit E', attached hereto.

15. The Property has a Solar Voltaic Generating System (i.e. Solar Panels) installed on its roof. The appraisal of the Property **did take into account the value of the Solar Panels**, attributing an increase in value to the Property of $58,000 minus depreciation, for a net increase in value to the Property of $50,000 - $52,500. I therefore respectfully submit that the requirement to payoff the Solar Panels / Sunnova Management, is approproiate.

### **LIENS AGAINST THE PROPERTY**

16. The Property is subject to a first mortgage held by US Bank, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2019-02 and serviced by Nationstar Mortgage d/b/a Mr. Cooper (collectively, both the holder and servicer shall be referred to as 'Nationstar Mortgage'). As of the commencement of the Chapter 11 case, the total amount owed to Nationstar Mortgage was $409,464.

17. The Property is also subject to a docketed judgment lien in favor of Philly Properties GP, LLC, docketed at DJ-022480-2021. The amount owed to Philly Properties GP, LLC and secured by this docketed judgment is $245,019.

18. Turnkey Management Corp. obtained a judgment against the Debtor post-petition and in violation of the automatic stay, which was docketed as DJ-181541-2021 on December 7, 2021. It appears of record against the Property, but should not attach. Nevertheless, City Abstract Title is requiring that it be addressed.

19. In addition, the Solar Panels on the property are secured by a filed and recorded UCC Financing Statement recorded on September 26, 2019 as a New Jersey Fixture Filing under Docket No. 00012725 in favor of Sunnova Management, LLC with an approximate payoff in the amount of

$54,365.26.[1]  See 'Exhibit F'.

20. Pursuant to the Debtor's Second Amended Plan of Reorganization Dated October 19, 2021 and Confirmed on a non-consensual basis by the Court pursuant to an Order dated December 22, 2021, as well as that certain 'Settlement Agreement and Consent Order Resolving Adversary Proceeding and Objection to Confirmation of Chapter 11 Plan of Philly Properties GP, LLC and Drexel Properties GP, LLC' entered by the Court on January 12, 2022, the treatment of Philly Properties GP, LLC's claim, in relevant part, is as follows:

   a. Philly Properties GP, LLC has an allowed secured claim of $245,019.[2]
   b. With respect to New Jersey properties – Philly Properties GP, LLC shall be entitled to retain 80% of the net proceeds from the sales after payment of closing costs (including realty commission) and payment of superior liens.
   c. With respect to New Jersey properties – Philly Properties GP, LLC shall provide the Bankruptcy Estate with a carve-out equal to 20% of the net proceeds from the sales after payment of closing costs (including realty commission) and payment of superior liens.
   d. Any amounts provided to the bankruptcy estate give the Creditor a corresponding unsecured claim against the Debtor.

## DISPUTED LIENS AGAINST THE PROPERTY – TO BE SOLD FREE AND CLEAR OF THESE LIENS

### I. TURN-KEY MANAGEMENT CORP.

21. A recent judgment search has revealed that a judgment was entered on May 4, 2021 and docketed against the Debtor

---

[1] The Debtor notes that the UCC Financing Statement indicates that the "debtor's name is "Darrell Choates" in section 1, however it appears to properly identify the collateral and section 16 of the Financing Statement with an express reference to the real property and the Debtor, Choates G. Contracting, LLC.  The Debtor does not believe that this Financing Statement may be avoided.  Moreover, City Abstract Title will not insure title unless the debt referenced in the Financing Statement is satisfied.
[2] See Exhibit A, Page 20.

5

on December 7, 2021 in favor of Turn-Key Management Corp. Docket No. CAM-DC-000616-21, DJ-181541-2021.  This judgment and docketing occurred after the Debtor's bankruptcy case was filed and in violation of the automatic stay provided for by 11 U.S.C. §362(a).  However, Turn-key Management Corp. was not listed as a creditor in the Debtor's schedules and accordingly did not have notice of the bankruptcy case.

### II. MORTGAGE DATED MAY 6, 2019 FROM DARRELL CHOATES TO SCOTT E. BRAIDWOOD

22. Title to the Real Property vested in the name of Choates G. Contracting, LLC by virtue of Deed dated May 6, 2019 and e-recorded in the Gloucester County Clerk's Office on May 8, 2019 in Book 6081, Page 227 from Scott E. Braidwood and Amy Braidwood, h/w to Choates G. Contracting, LLC.  See 'Exhibit G'.

23. Title to the Real Property has never changed since it was acquired by Choates G. Contracting and the Real Property has never been owned by Darrell Choates individually.

24. On May 6, 2022 Darrell Choates, individually, executed a mortgage in favor of Scott E. Braidwood, purportedly pledging the property as collateral for a $40,848.00 loan. See 'Exhibit H'.  (the 'Braidwood Mortgage').

25. The Braidwood Mortgage is invalid on its face as Darrell Choates, individually, has never had any rights in the Real Property.

26. Even though the Braidwood Mortgage is invalid on its face, City Abstract Title has required that it be addressed in order to insure title.  The Debtor has commenced an adversary proceeding against Scott E. Braidwood for a determination that the Braidwood Mortgage is invalid under Adv. Pro. No. 22-01261-ABA.

27. For reference, relevant portions of the Title Commitment Report and Requirements of City Abstract Title are attached hereto as "Exhibit I".

6

**DISCLOSURE OF INSIDER RELATIONSHIPS IN CONNECTION WITH SALE**

28. The proposed purchaser, Zerrick Balckom ('Purchaser' or 'the Purchaser' or 'Buyer' or 'the Buyer') is the brother of Darrell Choates, the principal of the Debtor.

29. The $20,000 deposit was provided by Personal Home Care C&G, LLC – a company which is jointly owned by Darrell Choates, Zerrick Balckom, and Christopher Dutcher.

30. Additionally, Mr. Dutcher is providing additional funds to the Buyer in order to assist the Buyer with the required down payment for the Purchase (approximately $100,000).

31. Notwithstanding these insider relationships between the Buyer and the principal of the Debtor and the principal of the Debtor's business partners and the business partner of the Buyer, this transaction was negotiated in good faith and is in the best interests of the Debtor's estate.

32. The benefits of a private sale to the Purchaser, as opposed to a sale on the open market are as follows:

   a. No realtor was involved in procuring the Purchaser, which means that the Estate will not have to pay a 5% realty commission. This represents a $30,000 savings to the Estate.

   b. The Purchaser is familiar with the Property and its conditions and has agreed to waive inspections – thereby accepting the Property as is, where is, and without the possibility of the sale falling apart due to inspection/repair issues.

   c. The Purchaser, in part to alleviate concerns about the familiar relationship to the Debtor's principal and numerous insider connections, has agreed to pay $7,000 more than the appraised value.

   d. If the Purchaser is unable to close on the sale pursuant to the Contract, all deposit monies are forfeit to the Sub-Chapter V Trustee for distribution to creditors of the Debtor.

**BENEFITS TO THE ESTATE OF THE SALE**

33. *Inter alia*, the Debtor's Chapter 11 plan requires that all unsecured creditors be paid 100% of their allowed unsecured claims.

34. As set forth above, the Bankruptcy Estate is entitled to receive 20% of the net proceeds of the sale after the payment of customary closing costs and the first mortgage on the property.

35. Assuming closing costs of 1%, there should be net proceeds of approximately $130,000.

36. Of the 20% carve-out to the Bankruptcy Estate, 80% is to be turned over to the Sub-Chapter V Trustee and 20% is to be retained by the Debtor for taxes and operations.[3]

37. In other words, Philly Properties is to receive 80% of the net proceeds, the Sub-V Trustee is to receive 16% of the net proceeds, and the Debtor is to receive 4% of the net proceeds.

38. Accordingly, the projected approximate distribution of the sales proceeds, at closing is projected to be as follows:

   a. Nationstar Mortgage:          Paid in Full

   b. Sunnova Management:           Paid in Full

WITH THE REMAINING BALANCE OF NET PROCEEDS BALANCE TO BE HELD IN ESCROW PENDING COURT RESOLUTION OF THE BRAIDWOOD MORTGAGE AND, IF NOT VOIDED IN THIS MOTION, THE TURN-KEY MANAGEMENT CORP. LIEN.  Assuming that the Braidwood Mortgage and Turn-Key Management Corp. liens are determined to be invalid, the resulting distribution to creditors from escrow will be approximately as follows:

   c. Philly Properties GP, LLC:    $104,000

---

[3] See <u>Exhibit A</u>, Page 4: "The Debtor shall pay over 80% of the net proceeds from each of these sales to the Sub-Chapter V Trustee for disbursement under the Chapter 11 Plan and retain 20% of the net proceeds for the payment of taxes and to fund operations"

8

    d. Bankruptcy Estate:             $26,000

        i. 80% share to Sub-V Trustee     $20,800
       ii. 20% share to Debtor           $5,200

39.     In addition to creating a fund of approximately $26,000 for the Bankruptcy Estate, this sale will also relieve the Debtor of the obligation to pay approximately $4,000 per month to Nationstar Mortgage (although it will also eliminate the Debtor's receipt of $5,000 per month in rents for the property).

40.     Additionally, this sale is projected to pay down approximately $104,000 of the claim of Philly Properties, GP, which will reduce the amount owed to Philly Properties, GP and secured by its Judgment Lien against other real estate owned by the Debtor. This means that as the Debtor sells other real estate it owns, Philly Properties, GP will eventually be paid off and then all net proceeds can be realized by the Bankruptcy estate (and divided 80/20 between the Sub-V Trustee and Debtor).

## CONTINGENCIES IF COURT DOES NOT INVALIDATE BRAIDWOOD MORTAGE / TURN-KEY

41.     If the Court does not invalidate the Braidwood Mortgage, it would need to be paid from the sales proceeds, which would reduce the net proceeds for distribution by approximately $50,000, resulting in an approximate amount of $80,000 available for distribution as follows:

    a. Philly Properties GP, LLC:     $64,000

    b. Bankruptcy Estate:            $16,000

        i. 80% share to Sub-V Trustee     $12,800
       ii. 20% share to Debtor           $3,200

42.     This still represents a significant benefit to the Estate.

43.     If the Court does not void the Turn-Key Management, Inc. judgment, the Debtor will bring an action to reclassify their claim from secured to unsecured due to there being no equity in the Property for the Turn-Key Management, Inc. judgment to attach to after consideration

of the Nationstar Mortgage and Philly Properties GP, LLC mortgage.

**CONCLUSION**

44. I believe that approval of the sale of 122 Danton Lane, Mullica Hill, NJ to Zerrick Balckom for $600,000 under the terms and conditions set forth in the Contract is in the best interest of creditors and in the best interests of the Bankruptcy Estate and accordingly I ask that the Court approve the Sale and enter an order:

    i.) Authorizing and approving the sale of the Real Property to the Buyer at the agreed upon contract price, free and clear of the liens identified herein, with liens to attach to proceeds;

    ii.) Authorizing and empowering the Debtor to execute any and all additional agreements as contemplated by the sale, and to execute and deliver such additional instruments as may be necessary to consummate the sale including, but not limited to a deed with covenants against grantor's acts, affidavit of title, any available 'back title' and survey and all usual and customary closing documents;

    iii.) Making a finding that the proposed sale is fair and reasonable and was entered into in good faith within the meaning of the Bankruptcy Code;

    iv.) Paying Nationstar Mortgage in full, pursuant to a written payoff statement provided by Nationstar Mortgage, with such payment to occur at closing;

    v.) Paying Sunnova Management, LLC in full, pursuant to a written payoff statement provided, with such payment to occur at closing;

    vi.) Voiding the judgment entered in favor of Turn-Key Management Corp. in Case No. DC-000616-21 and voiding the accompanying Docketed Judgment, DJ-181541-2021.

    vii.) Authorizing the sale of the Property free and clear of the Braidwood Mortgage pursuant to 11 U.S.C.

      §363(f)(4), with any potential lien from the Braidwood Mortgage to attach to the net sales proceeds.

viii.) Disbursing the net sales proceeds at closing into the attorney trust account of McDowell Law, PC, to be held in escrow pending a resolution of the Braidwood mortgage and, if applicable, the Turn-Key Management Corp. judgment lien.

ix.) Confirming that the net proceeds held in escrow shall remain subject to distribution scheme set forth in the confirmed plan (i.e. 80% to Philly Properties GP, LLC, 16% to the Sub-V Trustee, and 4% to the Debtor); and

x.) Granting such other and further relief as this Court may deem just and proper.

I certify the above statements are true under penalty of perjury.

BY: /s/ Darrell Choates    DATE:    August 16, 2022
    Darrell Choates
    CEO, Choates G. Contracting, LLC