3/27/2023 9:39:37 AM

## Compare Results

| Old File: | | New File: |
|---|---|---|
| **Chapter 11 Plan - Second Amended Plan Rev 10.15.21.pdf** | versus | **MODIFIED CHAPTER 11 PLAN DATED 3-16-2023 ALL CHANGES ACCEPTED.pdf** |
| 38 pages (438 KB) | | 39 pages (449 KB) |
| 10/19/2021 2:30:51 PM | | 3/20/2023 9:26:57 AM |

| Total Changes | Content | | Styling and Annotations | |
|---|---|---|---|---|
| **194** | 116 | Replacements | 27 | Styling |
| | 25 | Insertions | 1 | Annotation |
| | 25 | Deletions | | |

**Go to First Change (page 1)**

Summary of Comments on Microsoft Word - Chapter 11 Small Business Combined Plan of Reorganization and Disclosure Statement 5-30-12.docx

Page: 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:  Choates G. Contracting, LLC

Debtor

Case No.    21-13085-ABA

Judge:    Andrew B. Altenburg, Jr.

Chapter 11 (Subchapter V) Small Business

**CHAPTER 11, SUBCHAPTER V DEBTOR'S FIRST POST-CONFRMATION MODIFIED PLAN OF REORGANIZATION DATED MARCH 16, 2023**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM No. _____ AT THE   UNITED STATES BANKRUTPCY COURT, DISTRICT OF NEW JERSEY,  401 MARKET STREET, CAMDEN, NJ 08102**

**Your rights may be affected by this Plan. You should consider discussing this document with an attorney.**

2

Comments:

Graphic Element Deleted

Graphic Element Deleted

Text Replaced
[Old]: "Hon."
[New]: "Debtor Judge:"

Text Attributes Changed
Font-style changed.

Text Replaced
[Old]: "Jr.,"
[New]: "Jr."

Text Replaced
[Old]: "V Small Business) Debtor."
[New]: "V) Small Business"

Graphic Element Deleted

Text Replaced
[Old]: "SECOND AMENDED"
[New]: "FIRST POSTCONFRMATION MODIFIED"

Text Replaced
[Old]: "OCTOBER 19, 2021 This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Choates G. Contracting, LLC, and to seek your vote to accept the Plan. You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document. IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT"
[New]: "MARCH 16, 2023"

Text Inserted
"A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM No."

Text Replaced
[Old]: "THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY"
[New]: "_____ AT THE UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY, 401 MARKET STREET, CAMDEN,"

Font-style changed.

Text Replaced
[Old]: "YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____ THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: McDowell Law, PC ATTN: Daniel / Choates Balloting 46 W. Main Street Maple Shade, NJ 08052"
[New]: "NJ 08102"

Text Deleted
"A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM No."

Text Deleted
"_____."

Graphic Element Deleted

Text Deleted
"AT THE"

Text Deleted
"[_____"

Text Attributes Changed
Font "TimesNewRomanPSMT" changed to "TimesNewRomanPS-BoldMT".

Comments from page 1 continued on next page

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:   Choates G. Contracting, LLC

                                          Case No.      21-13085-ABA

         Debtor                           Judge:        Andrew B. Altenburg, Jr.

                                          Chapter 11 (Subchapter V)
                                          Small Business

**CHAPTER 11, SUBCHAPTER V DEBTOR'S FIRST POST-CONFRMATION MODIFIED PLAN OF REORGANIZATION DATED MARCH 16, 2023**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN  COURTROOM  No. _____ AT THE  UNITED STATES BANKRUPTCY COURT, DISTRICT OF NEW JERSEY,  401 MARKET STREET, CAMDEN, NJ 08102**

**Your rights may be affected by this Plan. You should consider discussing this document with an attorney.**



Text Inserted
"2"

2

**TABLE OF CONTENTS**

**Contents**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS..............5

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR. 7

1.1.    Nature of the Debtor's Business...............................7

1.2.    History of Business Operations of the Debtor ........................7

1.3.    Filing of the Debtor's Chapter 11 Case...........................7

1.4.    Legal Structure and Ownership.............................7

1.5.    Debtor's Assets.......................................7

1.6.    Debtor's Liabilities....................................7

1.7.    Current and Historical Financial Conditions.......................7

1.8.    Events Leading to the Filing of the Bankruptcy Case.....................8

1.9.    Significant Events During the Bankruptcy Case.......................10

1.10.    Projected Recovery of Avoidable Transfers ...........................10

ARTICLE 2: THE PLAN...........................................10

2.1.    Unclassified Claims ...................................11

2.2    Classes of Claims and Equity Interests...........................14

2.3.    Estimated Number and Amount of Claims Objections. .....................24

2.4.    Treatment of Executory Contracts and Unexpired Leases. ...................24

2.5.    Means for Implementation of the Plan, Consequences for Failure to Make Plan Payments .......................................25

2.6    Events of Default, Material Default, and Consequences Thereof. .............27

2.7.    Payments...........................................29

2.8.    Post-Confirmation Management.............................29

2.9.    Tax Consequences of the Plan. ..............................29

2.10.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.......................................30

ARTICLE 3: FEASIBILITY OF PLAN...................................30

3.1.    Ability to Initially Fund Plan...............................30



Text Replaced
[Old]: "4"
[New]: "5"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "6"
[New]: "7"

Text Replaced
[Old]: "7"
[New]: "8"

Annotation Attributes Changed

Text Replaced
[Old]: "...................... 8"
[New]: "...................... 10"

Annotation Attributes Changed

Text Replaced
[Old]: "...................... 8"
[New]: "...................... 10"

Annotation Attributes Changed

Text Replaced
[Old]: "...................... 8"
[New]: "...................... 10"

Annotation Attributes Changed

Text Replaced
[Old]: "...................... 9"
[New]: "...................... 11"

Comments from page 2 continued on next page

**TABLE OF CONTENTS**

**Contents**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS.............5

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR . 7

1.1.    Nature of the Debtor's Business...........................7

1.2.    History of Business Operations of the Debtor ..............7

1.3.    Filing of the Debtor's Chapter 11 Case........................7

1.4.    Legal Structure and Ownership.................................7

1.5.    Debtor's Assets................................................7

1.6.    Debtor's Liabilities...........................................7

1.7.    Current and Historical Financial Conditions.................7

1.8.    Events Leading to the Filing of the Bankruptcy Case...........8

1.9.    Significant Events During the Bankruptcy Case...............10

1.10.    Projected Recovery of Avoidable Transfers ..................10

ARTICLE 2: THE PLAN..................................................10

2.1.    Unclassified Claims .........................................11

2.2    Classes of Claims and Equity Interests......................14

2.3.    Estimated Number and Amount of Claims Objections.............24

2.4    Treatment of Executory Contracts and Unexpired Leases. .......24

2.5.    Means for Implementation of the Plan; Consequences for Failure to Make
Plan Payments ......................................................26

2.6    Events of Default, Material Default, and Consequences Thereof.....27

2.7.    Payments....................................................29

2.8.    Post-Confirmation Management.................................29

2.9.    Tax Consequences of the Plan. ...............................29

2.10. Projections in Support of Debtor's Ability to Make Payments Under the
Proposed Plan ......................................................30

ARTICLE 3: FEASIBILITY OF PLAN.......................................30

3.1.    Ability to Initially Fund Plan...............................30



Annotation Attributes Changed

Text Replaced
[Old]: "12"
[New]: "14"

Text Replaced
[Old]: "22"
[New]: "24"

Text Replaced
[Old]: "22"
[New]: "24"

Annotation Attributes Changed

Text Replaced
[Old]: "23"
[New]: "25"

Annotation Attributes Changed

Text Replaced
[Old]: "26"
[New]: "27"

Text Replaced
[Old]: "27"
[New]: "29"

Annotation Attributes Changed

Text Replaced
[Old]: "27"
[New]: "29"

Annotation Attributes Changed

Text Replaced
[Old]: "28"
[New]: "29"

Annotation Attributes Changed

Text Replaced
[Old]: "28"
[New]: "30"

Annotation Attributes Changed

Text Replaced
[Old]: "28"
[New]: "30"

Annotation Attributes Changed

Text Replaced
[Old]: "28"
[New]: "30"

Text Replaced
[Old]: "2"
[New]: "3"

Page: 3



3.2.   Ability to Make Future Plan Payments And Operate Without Further Reorganization ........................................................................30

ARTICLE 4: LIQUIDATION ANALYSIS ..................................................30

ARTICLE 5: DISCHARGE .........................................................................31

5.1.   Discharge .......................................................................................31

ARTICLE 6 .................................................................................................31

GENERAL PROVISIONS ..........................................................................31

6.1.   Title to Assets ...............................................................................31

6.2.   Binding Effect ...............................................................................31

6.3.   Severability ...................................................................................31

6.4.   Retention of Jurisdiction by the Bankruptcy Court ......................31

6.5.   Captions .........................................................................................31

6.6.   Modification of Plan ......................................................................32

6.7.   Final Decree ..................................................................................32

ARTICLE 7: ATTACHMENTS ...................................................................34

ARTICLE 8: FREQUENTLY ASKED QUESTIONS ................................35

ARTICLE 9: DEFINITIONS .......................................................................37

Annotation Attributes Changed

Text Replaced
[Old]: "28"
[New]: "30"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "30"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "31"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "31"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "31"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "31"

Annotation Attributes Changed

Text Replaced
[Old]: "29"
[New]: "31"

Annotation Attributes Changed

Text Replaced
[Old]: "30"
[New]: "32"

Annotation Attributes Changed

Text Replaced
[Old]: "30"
[New]: "32"

Annotation Attributes Changed

Text Replaced
[Old]: "30"
[New]: "32"

4

Comments from page 3 continued on next page



3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization ........................................................................ 30

ARTICLE 4: LIQUIDATION ANALYSIS ................................................ 30

ARTICLE 5: DISCHARGE ............................................................... 31

5.1.    Discharge. ..................................................................... 31

ARTICLE 6 ................................................................................ 31

GENERAL PROVISIONS ............................................................. 31

6.1.    Title to Assets. ............................................................... 31

6.2.    Binding Effect. ............................................................... 32

6.3.    Severability. .................................................................. 32

6.4.    Retention of Jurisdiction by the Bankruptcy Court. ................. 32

6.5.    Captions. ...................................................................... 32

6.6.    Modification of Plan. ....................................................... 32

6.7.    Final Decree. ................................................................. 33

ARTICLE 7: ATTACHMENTS ........................................................ 34

ARTICLE 8: FREQUENTLY  ASKED QUESTIONS ............................. 35

ARTICLE 9: DEFINITIONS ........................................................... 37

4

Annotation Attributes Changed

Text Replaced
[Old]: "30"
[New]: "32"

Annotation Attributes Changed

Text Replaced
[Old]: "30"
[New]: "32"

Annotation Attributes Changed

Text Replaced
[Old]: "31"
[New]: "33"

Text Replaced
[Old]: "32"
[New]: "34"

Text Replaced
[Old]: "33"
[New]: "35"

Text Replaced
[Old]: "35"
[New]: "37"

Text Replaced
[Old]: "3"
[New]: "4"

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

I.    THE CONFIRMED PLAN

The Debtor's Second Amended Chapter 11 Plan of Reorganization Dated October 19, 2021 (the 'Confirmed Plan') was confirmed by the Court pursuant to an Order confirming Chapter 11, Sub-Chapter V, Non-Consensual Plan of Reorganization entered December 22, 2021.  **The Debtor now seeks to modify the Confirmed Plan.**

The Confirmed Plan provided for the surrender in full satisfaction of certain real properties as well as the payment in full of 100% of all unsecured claims and the secured claim of Philly Properties GP, LLC.

The Confirmed Plan provided for monthly payments by the Debtor to the Sub-Chapter V Trustee on the following payment schedule:

Year 1 :      $5,000 per month paid to the Sub-Chapter V Trustee;
Year 2 :      $10,000 per month paid to the Sub-Chapter V Trustee;
Years 3, 4, 5: $12,000 per month paid to the Sub-Chapter V Trustee;

The first payment under the Confirmed Plan was due January 1, 2022 and as such, the time period of a 'Year' in the Confirmed Plan matches the calendar year.

In addition, the Debtor proposed to liquidate their interest in the following properties in order to make additional payments under the plan.

a.  5300 Master Street, Philadelphia, PA
b.  13 Riviera Drive, Pennsville, NJ
c.  120 Peace Lane, Glassboro, NJ
d.  401 Cooper Landing Road, Suite C-4, Cherry Hill NJ

However, the failure to liquidate any of these properties was not an event of default under the Confirmed Plan.

To the extent that there were net proceeds after the payment of secured claims, the Debtor was to pay over 80% of the net proceeds from each of these sales to the Sub-Chapter V Trustee for disbursement under the Chapter 11 Plan and retain 20% of the net proceeds for the payment of taxes and to fund operations.  The payment arrearages with respect to secured obligations on the properties listed above (for sale/refinance) will be paid at the time of the sale/refinance.

In addition, the Debtor was obligated to sell real estate located at 122 Danton Lane, Mullica Hill, New Jersey within one year of confirmation of the plan.

II.    THE MODIFIED PLAN

5

Page: 4

Text Replaced
[Old]: "The Debtor seeks to repay unsecured creditors 100% of the amounts that they are owed over a period of up to five (5) years. The Debtor's expectation is that creditors will in fact be paid off sooner than the full five years. The Debtor will fund this payment through a combination of sales of real estate parcels and income from future operations. The Debtor believes that the Sub-Chapter V Trustee shall remain involved in the case and act as the disbursing agent under the Plan, as the Debtor believes that this Plan will need to be confirmed under 11 U.S.C.§1191(b) [ or even if confirmed consensually, one of the terms of the consent will be the continued involvement of the Sub-Chapter V Trustee.] The Debtor will pay from future earnings the following amounts to the Sub-Chapter V Trustee, for disbursement to creditors: Payments are proposed as follows: commencing the 1 st of the month following the entry of an order of confirmation: Year 1: $5,000 per month paid to the Sub-Chapter V Trustee; Year 2: $10,000 per month paid to the Sub-Chapter V Trustee; Years 3, 4, 5: $12,000 per month paid to the Sub-Chapter V Trustee; In addition, the Debtor proposes to sell the following pieces of real estate within six (6) months of the entry of an order of confirmation:"
[New]: "I. THE CONFIRMED PLAN The Debtor's Second Amended Chapter 11 Plan of Reorganization Dated October 19, 2021 (the 'Confirmed Plan') was confirmed by the Court pursuant to an Order confirming Chapter 11, Sub-Chapter V, Non-Consensual Plan of Reorganization entered December 22, 2021. The Debtor now seeks to modify the Confirmed Plan. The Confirmed Plan provided for the surrender in full satisfaction of certain real properties as well as the payment in full of 100% of all unsecured claims and the secured claim of Philly Properties GP, LLC. The Confirmed Plan provided for monthly payments by the Debtor to the Sub-Chapter V Trustee on the following payment schedule: Year 1 : $5,000 per month paid to the Sub-Chapter V Trustee; Year 2 : $10,000 per month paid to the Sub-Chapter V Trustee; Years 3, 4, 5: $12,000 per month paid to the Sub-Chapter V Trustee; The first payment under the Confirmed Plan was due January 1, 2022 and as such, the time period of a 'Year' in the Confirmed Plan matches the calendar year. In addition, the Debtor proposed to liquidate their interest in the following properties in order to make additional payments under the plan."

Text Replaced
[Old]: "The Debtor shall"
[New]: "However, the failure to liquidate any of these properties was not an event of default under the Confirmed Plan. To the extent that there were net proceeds after the payment of secured claims, the Debtor was to"

Text Replaced
[Old]: "The Debtor shall also sell"
[New]: "In addition, the Debtor was obligated to sell real estate located at"

Text Replaced
[Old]: "Pending"
[New]: "II. THE MODIFIED PLAN"

Text Inserted
"5"

Page: 5

The Modified Plan provides for the T the surrender in full satisfaction of the same real properties as well as the payment in full of 100% of all unsecured claims and the secured claim of Philly Properties GP, LLC.

The Modified Plan provides for monthly payments by the Debtor to the Sub-Chapter V Trustee on the following payment schedule:

| | |
|---|---|
| Year 1 (commencing January 1, 2022): | $5,000 per month paid to the Sub-Chapter V Trustee; |
| Year 2 (commencing January 1, 2023) : | No payments until Chapter 11 Modified Plan is confirmed.  Within ten (10) days of confirmation, Debtor or third party on bhalf of Debtor shall tender a sum to the Sub-V Trustee equal to $5,000 per month, calculated with as if payments were to commence March 1, 2023 |
| Years 3, 4, 5: | $12,000 per month paid to the Sub-Chapter V Trustee; |

**ORDER OF DISTRIBUTION:**

Throughout the duration of the Confirmed Chapter 11 Plan and the Modified Chapter 11 Plan payments shall be disbursed in a "waterfall" approach, with Administrative Expenses being paid first, then Priority Claims being paid second, then Secured Claims (including arrearages) being paid third, then Lease Arrearages being paid fourth, and general unsecured claims being paid fifth.

Claims in the same category shall be paid pro-rata.

Estate professionals may submit post-confirmation fee applications and if approved, those post-petition fees will be payable through the plan as an Administrative Expense.

Text Replaced
[Old]: "the sale, the Debtor shall maintain regular monthly mortgage payments to Mr. Cooper, the mortgagee on said property. Upon payment to the Sub-Chapter V Trustee sufficient to pay 100% to all unsecured creditors and claimants, the Debtor's Chapter 11 Plan shall be completed. It is projected that this will occur BEFORE the end of scheduled periodic payments as set forth above."
[New]: "The Modified Plan provides for the T the surrender in full satisfaction of the same real properties as well as the payment in full of 100% of all unsecured claims and the secured claim of Philly Properties GP, LLC. The Modified Plan provides for monthly payments by the Debtor to the Sub-Chapter V Trustee on the following payment schedule: Year 1 (commencing January 1, 2022): $5,000 per month paid to the Sub-Chapter V Trustee; Year 2 (commencing January 1, 2023) : No payments until Chapter 11 Modified Plan is confirmed. Within ten (10) days of confirmation, Debtor or third party on bhalf of Debtor shall tender a sum to the Sub-V Trustee equal to $5,000 per month, calculated with as if payments were to commence March 1, 2023 Years 3, 4, 5: $12,000 per month paid to the Sub-Chapter V Trustee;"

Text Replaced
[Old]: "Plan,"
[New]: "Confirmed Chapter 11 Plan and the Modified"

Text Replaced
[Old]: "4"
[New]: "6"

6

**Page: 6**

# ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

1.1. **Nature of the Debtor's Business.**

The Debtor is a certified minority owned Real Estate Construction Company. The Debtor coordinates and performs construction services, often as a subcontractor, but from time to time as a general contractor. The Debtor typically uses union laborers to complete the work.

In addition, the Debtor owns numerous piece of real estate which were acquired for the purpose of holding and renting.

1.2. **History of Business Operations of the Debtor**

The Debtor was formed on or about February 21, 2018. In 2018 the Debtor had gross revenues of approximately $945,000. In 2019 the Debtor had gross revenues of approximately $953,000. In 2020 the Debtor had gross revenues of approximately $445,000.

1.3. **Filing of the Debtor's Chapter 11 Case.**

On April 15, 2021, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Camden, New Jersey.

1.4. **Legal Structure and Ownership.**

The Debtor is a New Jersey Limited Liability Company 100% owned by Darrell Choates.

1.5. **Debtor's Assets.**

See attached Exhibit A for a list of the Debtor's primary assets, fair market value of same, and the basis for valuation.

1.6. **Debtor's Liabilities.**

For secured obligations, see Exhibit B.

For all other obligations, also see Exhibit B.

1.7. **Current and Historical Financial Conditions.**

As of the commencement of the case, the Debtor had no operating projects, with significant projects to come during this year and the years to follow. The Debtor is currently in the process of getting work and jobs. The Debtor believes that the next few years of operation will be the best years.

7

Text Inserted
"ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR"

Text Inserted
"Nature of the Debtor's Business."

Image Inserted

Image Deleted

Text Deleted
"ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR"

Text Deleted
"Nature of the Debtor's Business."

Text Replaced
[Old]: "A."
[New]: "B."

Text Inserted
"also"

Text Replaced
[Old]: "6"
[New]: "7"

This believe is based on the overall general improvement in the business climate – since COVID-19 and its lockdowns and restrictions have passed, there is pent up demand for the kinds of construction projects the Debtor completes.

Current financial information may be obtained by reviewing the Debtor's monthly operating reports which have been filed with the Court every month since the case was commenced.

1.8. **Events Leading to the Filing of the Bankruptcy Case,**

Two major events have caused the Debtor to need to file this Chapter 11 case.

First is the COVID-19 Pandemic. As a result of lockdowns and shutdowns, etc., the Debtor had significantly fewer projects to complete and as a result, construction revenues were down approximately 50% in 2020 as opposed to 2019 revenues. Additionally, the pandemic emboldened a number of the Debtors' tenants, who ceased paying rent. The Debtor was unable to compel payment through eviction due to various moratoria. This loss of cash flow led to the Debtor falling behind on most of its secured obligations.

Second – prior to the filing of the bankruptcy case the Debtor hired an individual named Joseph Geromini to act as CEO and be responsible for the operations of the Debtor. Geremini entered into a series of contracts with Philly Properties GP, LLC and Drexel Properties GP, LLC (common ownership, both creditors represented by same attorney). Geromini underbid the projects and mismanaged the construction. Additionally, there were delays and cost overruns caused by Philly Properties GP, LLC and Drexel Properties GP, LLC by virtue of their failure to have proper permitting and architectural drawings. Philly Properties GP, LLC and Drexel Properties GP, LLC also fired the general contractor for the project (l2i) in the middle of construction.

The Debtor has determined that Geromini overpaid himself out of draws from the projects and ultimately the funding for the project ran out before it was completed. Upon learning of what Geromini did, the Debtor terminated him[1]. On June 23, 2021 the US Department of Justice indicted Geromini with 10 counts of wire fraud and two counts of securities fraud, including charges relating to embezzlement from former employees.

Litigation ensued by both Philly Properties GP, LLC and Drexel Properties GP, LLC . Philly Properties GP, LLC obtained a judgment in Pennsylvania for approximately

---

[1] On June 23, 2021 the US Department of Justice indicted Geromini with 10 counts of wire fraud and two counts of securities fraud, including charges relating to embezzlement from his employer. These actions occurred prior to Geromini being employed by the Debtor. See https://www.justice.gov/usao-nj/pr/former-chief-operating-officer-philadelphia-technology-start-charged-securities-fraud-and

Page: 8

$240,000 which was domesticated in New Jersey shortly prior to the filing of the case. Drexel Properties GP, LLC's lawsuit was still pending at the time of the bankruptcy case filing.

Philly Properties GP, LLC levied on the Debtor's pre-petition bank accounts, leading to the filing of this Chapter 11 bankruptcy case.

Following confirmation of the Chapter 11 Plan, the Debtor's revenues did not grow as anticipated and the Debtor finds it is unable to pay $10,000 per month commencing in Year 2.



**Text Inserted**
"$240,000 which was domesticated in New Jersey shortly prior to the filing of the case."

**Text Inserted**
"Following confirmation of the Chapter 11 Plan, the Debtor's revenues did not grow as anticipated and"

**Image Deleted**

**Text Replaced**
[Old]: "Significant Events During the Bankruptcy Case."
[New]: "the Debtor finds it is unable to pay $10,000 per month commencing in Year 2."

Font "TimesNewRomanPS-BoldMT" changed to "TimesNewRomanPSMT".

**Text Inserted**
"9"

9

1.9.    **Significant Events During the Bankruptcy Case.**

i.      The Debtor commenced the Chapter 11 Case on April 15, 2021.
ii.     On April 20, 2021 Douglas Stanger, Esq. was appointed as the Sub-chapter V Trustee
iii.    On May 7, 2021 McDowell Law, PC's retention as general counsel was approved by the Court.
iv.     On May 21, 2021 Bradley K. Sclar, Esq.'s retention as special counsel was approved by the Court.
v.      On May 27, 2021 the Debtor commenced an adversary proceeding against Philly Properties GP, LLC in Case No. 21-01281, seeking to avoid certain unperfected judgment liens.
vi.     On May 28, 2021 Bederson LLP's retention as accountant to the Debtor was approved by the Court.
vii.    On June 3, 2021 Kelli Fishbein was approved by the Court to act as realtor to the Debtor.
viii.   The Lawsuit entitled Drexel Properties GP, LLC v. Choates G. Contracting & Darrell Choates, Sr., pending in the superior Court of New Jersey, Law Division, Gloucester County; GLO-L-000135-20 was stayed as to the Debtor by virtue of the bankruptcy filing.
ix.     The Debtor filed a Chapter 11 Plan on July 13, 2021 which was withdrawn on July 16, 2021.
x.      The Debtor filed their First Amended Chapter 11 Plan on July 16, 2021.
xi.     The Debtor filed their Second Amended Chapter 11 Plan on October 19, 2021
xii.    The Court confirmed the Debtor's Second Amended Chapter 11 Plan on December 9, 2021 (order entered December 22, 2021).
xiii.   The Debtor commenced an adversary proceeding against Scott E. Braidwood on August 14, 2022 seeking to avoid the fixing of a mortgage against the Debtor's real estate located at 122 Danton Lane, Mullica Hill, NJ.
xiv.    On September 14, 2022 the Court entered an order conditionally approving the sale of 122 Danton Lane, Mullica Hill, NJ.
xv.     In connection with the sale of 122 Danton Lane, Mullica Hill, NJ, the Debtor resolved the Braidwood adversary proceeding settled the claims of Turn-Key Management Corp., and resolved the objection of Philly Properties GP, LLC and Drexel Properties GP, LLC (See Docket No. 206, 207, 215).
xvi.    The Debtor closed on the sale of 122 Danton Lane on December 23, 2022.
xvii.

1.10.   **Projected Recovery of Avoidable Transfers**

NONE

**ARTICLE 2: THE PLAN**

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a clasfor purposes of

payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**2.1.   Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

11

2.  If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Administrative Tax Claim | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |

12

Page: 12

| | | |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court (through confirmation) | $57,940.35<br><br>All of these have been previously approved by the Court. | After Bankruptcy Court approval, Payment through the Plan as follows:<br><br>Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Professional fees, as approved by the Bankruptcy Court (post-confirmation) | $45,000 | After Bankruptcy Court approval, Payment through the Plan as follows:<br>Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE |
| Trustee | INCLUDED IN PROFESSIONAL FEE ESTIMATES, ABOVE | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>Any allowed claim of this type will be paid though the plan as a ADMINISTRATIVE EXPENSE |
| TOTAL | $102,940 | |

**Annotations:**

Text Replaced
[Old]: "$50,000"
[New]: "After Bankruptcy Court approval, Payment through the Plan as follows: Any allowed claim of this type will be paid though the plan as an ADMINISTRATIVE EXPENSE"

Text Inserted
"$57,940.35 All of these have been previously approved by the Court."

Text Inserted
"(through confirmation)"

Text Inserted
"Professional fees, as approved by the Bankruptcy Court (postconfirmation)"

Text Inserted
"$45,000"

Text Replaced
[Old]: "$5,000"
[New]: "INCLUDED IN PROFESSIONAL FEE ESTIMATES, ABOVE"

Text Replaced
[Old]: "$55,000.00"
[New]: "$102,940"

Text Replaced
[Old]: "11"
[New]: "13"

   B.   Priority Tax Claims.

   Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular

13

installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| State of New Jersey, Division of Taxation<br><br>Claim #1-1 | $1,671.24<br><br>Computed as $1,475.35 (as set forth in claim) plus pre-computed interest over 5 years at 5% interest rate | May 3, 2021 | Any allowed claim of this type will be paid though the plan as a PRIORITY CLAIM.<br><br>If for any reason, this claim has not been paid in full prior to April 15, 2026, the Debtor shall immediately pay any remaining amounts directly to the Creditor in order to satisfy the claim. |

**2.2    Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.  In addition, certain claims secured only by the

debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| **CLASS 1** | *Secured claim of:* Nationstar Mortgage d/b/a Mr. Cooper<br><br>Collateral description: 122 Danton Lane Mullica Hill, New Jersey<br><br>Allowed Secured Amount = $409,464.74 **<br><br>Priority of lien = 1st Position Mortgage<br><br>Principal owed = $360,222.22<br><br>Pre-pet. arrearage = $24,567.11<br><br>Total claim = $ 409,464.74<br><br>** includes a potential pre-payment penalty of up to $17,077.69 | NO | IMPAIRED | CREDITOR WAS PAID IN FULL FROM SALE OF REAL PROPERTY ON DECEMBER 23, 2022 |

15

Page: 14

Text Replaced
[Old]: "Debtor shall maintain post-petition contractual monthly payments directly to Nationstar Mortgage d/b/a Mr. Cooper. The arrearages portion of this claim shall be paid as a Secured Claim from Chapter 11 Plan payments. Creditor shall retain their lien. Debtor shall have right use creditor's cash collateral (rents) to pay creditor and fund the Plan."
[New]: "CREDITOR WAS PAID IN FULL FROM SALE OF REAL PROPERTY ON DECEMBER 23, 2022"

Text Replaced
[Old]: "13"
[New]: "15"



| CLASS 2 | Secured claim of: City of Philadelphia / School District of Philadelphia

Collateral description; 5300 Master Street, Philadelphia, PA

Allowed Secured Amount = $ 4,695.47
Priority of lien = Super-priority Municipal Lien

Principal owed = $ 4,695.47

Pre-pet. arrearage = $ 4,695.47
Total claim = $ 4,695.47 | NO | NOT IMPAIRED | CLAIM WAS SATISFIED BY DEBTOR'S PRINCIPAL FOLLOWING CONFIRMATION OF PLAN |

Page: 15

Text Replaced
[Old]: "Claim will be paid in full by third party (Darrell Choates, principal of Debtor) within ten (10) days of confirmation of the plan. Creditor shall retain their lien until paid."
[New]: "CLAIM WAS SATISFIED BY DEBTOR'S PRINCIPAL FOLLOWING CONFIRMATION OF PLAN"

Text Replaced
[Old]: "14"
[New]: "16"

16



| CLASS 3 | Secured claim of: City of Philadelphia / Water Revenue Bureau<br><br>Collateral description; 5300 Master Street, Philadelphia, PA<br><br>Allowed Secured Amount = $ 1,534.71<br>Priority of lien = Super-priority Municipal Lien<br><br>Principal owed = $ 1,534.71<br><br>Pre-pet. arrearage = $ 1,534.71<br> Total claim = $ 1,534.71 | NO | NOT IMPAIRED | CLAIM WAS SATISFIED BY DEBTOR'S PRINCIPAL FOLLOWING CONFIRMATION OF PLAN |

Page: 16

Text Replaced
[Old]: "Claim will be paid in full by third party (Darrell Choates, principal of Debtor) within ten (10) days of confirmation of the plan. Creditor shall retain their lien until paid."
[New]: "CLAIM WAS SATISFIED BY DEBTOR'S PRINCIPAL FOLLOWING CONFIRMATION OF PLAN"

Text Replaced
[Old]: "15"
[New]: "17"

17

| CLASS 4 | *Secured claim of:*<br>Sandra Ronessa Miller<br><br>Collateral description:<br>5300 Master Street<br>Philadelphia, PA<br><br>Allowed Secured Amount =<br>$ 90,000<br><br>Priority of lien =<br>1ˢᵗ Position<br>Mortgage Lien<br><br>Principal owed =<br>$ 90,000<br><br>Pre-pet. arrearage =<br>$ Unknown<br><br>Total claim =<br>$ 90,000 | NO | IMPAIRED | Claim to be paid in full at time of sale of Real Estate which is collateral for claim.<br><br>No distributions to be made by Sub-Chapter V Trustee in the plan.<br><br>Creditor shall retain their lien. |

Page: 17

Text Replaced
[Old]: "16"
[New]: "18"

18



| CLASS 5 | *Secured claim of:* BSI FINANCIAL SERVICES | NO | IMPAIRED | Debtor shall surrender all rights to the collateral property commonly described as 73 West Road, Gibbstown, NJ to BSI Financial Services as servicer for IRP Fund II Trust 2A, its transferees or assignees and agrees to granting Secured Creditor automatic in rem relief from the automatic stay to proceed with under its state and contractual rights. |
| | Collateral description = 73 West Road, Gibbstown, NJ | | | |
| | Allowed Secured Amount = $ 213,265.65 | | | This surrender shall fully satisfy the in personam debt owed by Debtor to BSI Financial Services as servicer for IRP Fund II Trust 2A, its transferees or assignees. |
| | Priority of lien = 1st Position Mortgage | | | |
| | Principal owed = $ 213,265.65 | | | Creditor shall retain their lien on 73 West Road, Gibbstown, NJ |
| | Pre-pet. arrearage = $ 213,265.65 | | | |
| | (loan is matured) | | | |
| | Total claim = $ $213,265.65 | | | |

Page: 18

Text Replaced
[Old]: "17"
[New]: "19"

19



| CLASS 6 | *Secured claim of:* Pennsville Township | NO | IMPAIRED | Claim to be paid in full at time of sale of Real Estate which is collateral for claim. |
|---|---|---|---|---|
| | Collateral description = | | | Amount to be paid to creditor will be determined under state law at time of sale. |
| | 13 Riviera Drive Pennsville, NJ 08070 | | | |
| | Allowed Secured Amount = $ 16,052.59 | | | |
| | Priority of lien = Super-priority Real Estate Taxes | | | No distributions to be made by Sub-Chapter V Trustee in the plan. |
| | Principal owed = $ 16,052.59 | | | Creditor retains their lien on Riviera Drive, Pennsville, NJ 08070 |
| | Pre-pet. arrearage = $ 16,052.59 | | | |
| | Total claim = 16,052.59 | | | |

Page: 19

Text Replaced
[Old]: "18"
[New]: "20"

20



| CLASS 7 | *Secured claim of:* MidFirst Bank<br><br>Collateral description =<br><br>120 Peace Lane<br>Glassboro, NJ 08028<br><br>Allowed Secured Amount =<br>$ 52,424.11<br><br>Priority of lien =<br>1st Mortgage<br><br>Principal owed =<br>$ 28,124.11<br><br>Pre-pet. arrearage =<br>$ 31,678.47<br><br>Total claim =<br>$52,424.11 | NO | IMPAIRED | This debt is owed by the Estate of Rita Jones and is secured against 120 Peace Lane, Glassboro, NJ.<br><br>The Debtor holds a lease purchase option for $130,000 minus certain credits with Estate of Rita Jones, which would be responsible to pay this out of purchase proceeds.<br><br>Claim to be paid in full at time of sale of Real Estate which is collateral for claim.<br><br>No distributions to be made by Sub-Chapter V Trustee in the plan. |

Page: 20

Text Replaced
[Old]: "19"
[New]: "21"

21

Page: 21

| CLASS 8 | *Secured claim of:* Philly Properties GP, LLC<br><br>Collateral description = 5300 Master Street Philadelphia, PA; AND Judgment Lien against all other real estate owned by the Debtor.<br><br>Allowed Secured Amount = $245,019<br><br>Priority of lien = 2nd position judgment lien<br><br>Principal owed = $ 245,019<br><br>Pre-pet. arrearage = N/A<br><br>Total claim = $ 245,019<br><br>• ** Creditor received approximately $92,983.77 from sale of 122 Danton Lane.<br><br>• ** Creditor carved-out $17,711.20 for Bankruptcy Estatee, which was paid to Sub-V Trustee, resulting in additional $17,711.20 reduction in secured claim, but creation of $17,711.20 general unsecured claim. | NO | IMPAIRED | Treatment of Lien:<br><br>Creditor shall retain their judgment lien in the amount of the Allowed Secured Amount against all properties that are collateral.<br><br>With respect to 5300 Master Street, Philadelphia, PA – Creditor shall retain 100% net proceeds after payment of customary closing costs (including realty commission) and payment of superior liens<br><br>With respect to New Jersey Properties ONLY - As the Debtor sells properties subject to Creditor's lien, Creditor shall retain 80% of net proceeds after payment of customary closing costs (including realty commission) and payment of superior liens.<br><br>With respect to New Jersey Properties ONLY -- Creditor shall provide the Bankruptcy Estate with a carve-out equal to 20% of net proceeds after payment of customary closing costs (including realty commission) and payment of superior liens.<br><br>Amounts provided to bankruptcy estate via carve-out shall give the Creditor a corresponding unsecured claim against the Debtor.<br><br>In New Jersey, Creditor's judgment lien shall retain its character as a docketed judgment lien. |



**Text Inserted**
"• ** Creditor received approximately $92,983.77 from sale of 122 Danton Lane. • ** Creditor carved-out $17,711.20 for Bankruptcy Estatee, which was paid to Sub-V Trustee, resulting in additional $17,711.20 reduction in secured claim, but creation of $17,711.20 general unsecured claim."

**Text Replaced**
[Old]: "20"
[New]: "22"

B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim.  However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| N/A | N/A | N/A | N/A |

C.  Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class 14, which contains general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 9 | General Unsecured Claims, including any unsecured portion of Philly Properties GP, LLC claim. | IMPAIRED | Any allowed claim of this type will receive 100% payment, to be paid though the plan as a GENERAL UNSECURED CLAIM |

D.  Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

23

Page: 22

Text Replaced
[Old]: "21"
[New]: "23"

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 15 | Equity Interest holders | UNIMPAIRED | Retain ownership of Debtor/Reorganized Debtor |

### 2.3.   Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| | | |
| | | |

### 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[ X ] Assumption of Executory Contracts.

The Executory Contracts shown on **EXHIBIT B** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  **EXHIBIT B** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

Text Replaced
[Old]: "C"
[New]: "B"

Text Replaced
[Old]: "C"
[New]: "B"

Text Replaced
[Old]: "22"
[New]: "24"

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown as assumed on **EXHIBIT C**,  or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is** _____ . Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

**2.5.   Means for Implementation of the Plan, Consequences for Failure to Make Plan Payments**

**2.5.1   Order of Distribution:**

Throughout the duration of the Plan, Chapter 11 Plan payments shall be disbursed in a "waterfall" approach, with Administrative Expenses being paid first, then Priority Claims being paid second, then Secured Claims (including arrearages) being paid third, then Lease Arrearages being paid fourth, and general unsecured claims being paid fifth.

Claims in the same category shall be paid pro-rata.

**2.5.2 – Periodic Payments**

The Debtor will make monthly payments to the Sub-Chapter V Trustee, commencing the first day of the month following confirmation of the Plan as follows:

Year 1 (Commencing January 1, 2022):    $5,000 per month paid to the Sub-Chapter V Trustee;

Year 2:    No payments until Chapter 11 Modified Plan is confirmed.  Within ten (10) days of confirmation, Debtor shall tender a sum to the Chapter 11 Trustee equal to $5,000 per month, calculated with payments starting March 2023.  (i.e. if confirmed in April 2023, Debtor to tender 2 x $5,000 = $10,000; if confirmed in June 2023, Debtor to tender 4 x $5,000 == $20,000)

25

Page: 24

Graphic Element Deleted

Text Deleted
"Furthermore, the Debtor will enter into a NEW executory contract for the rent of 122 Danton Lane, providing for a $5,000/month lease payment from to the Debtor from the Debtor's principal, Darrell Choates. Said lease will be substantially in the form attached hereto"

Graphic Element Inserted

Text Replaced
[Old]: "1,"
[New]: "1 (Commencing January 1, 2022):"

Text Replaced
[Old]: "$10,000 per month paid to the Sub-Chapter V Trustee;"
[New]: "No payments until Chapter 11 Modified Plan is confirmed. Within ten (10) days of confirmation, Debtor shall tender a sum to the Chapter 11 Trustee equal to $5,000 per month, calculated with payments starting March 2023. (i.e. if confirmed in April 2023, Debtor to tender 2 x $5,000 = $10,000; if confirmed in June 2023, Debtor to tender 4 x $5,000 = $20,000)"

Text Replaced
[Old]: "23"
[New]: "25"

Years 3, 4, 5: $12,000 per month paid to the Sub-Chapter V Trustee.  Year 3 commences January 1, 2024.

These payments will be funded by the future operations of the Debtor.  If the Debtor's cash flow is insufficient in any given month to pay the Sub-Chapter V Trustee, then the Debtor's principal will attempt to cover the payment for that month from his own personal earnings and assets.

**2.5.3 – Sale of Real Properties**

The Debtor shall sell the following properties within twelve (12) months of confirmation:

   a.  5300 Master Street, Philadelphia, PA
   b.  13 Riviera Drive, Pennsville, NJ
   c.  120 Peace Lane, Glassboro, NJ

Any sale shall require bankruptcy court approval and the Debtor shall file motions to approve each sale with a notice and opportunity for creditors to be heard thereon.  Higher and better offers will be entertained in connection with such sale motion.  **The failure to sell all of the properties shall constitute an event of default under the Plan.**

If the Debtor is unable to sell any of the properties as a result of a sale being economically infeasible or economically inadvisable, then the Debtor may file a motion to abandon such property under 11 U.S.C. §544.  If abandonment is authorized, then the failure to sell such property shall not be an event of default.

Within thirty (30) days of confirmation of the Modified Plan, Philly Properties GP, LLC and Drexel Properties GP, LLC may recommend the real estate broker(s) to be used in connection with the sales of the above-referenced properties.  The Debtor **shall** engage the recommended real estate broker(s), and authorize the real estate broker to discuss the status of listings and offers with the Sub-V Trustee, Philly Properties GP, LLC, and Drexel Properties GP, LLC.  The Debtor shall promptly seek approval of their employment with this Court provided that i.) the real estate brokers are "disinterested" as to the Debtor; and ii.) the commission does not exceed the customary 6% real estate commission.

If Philly Properties GP, LLC and Drexel Properties GP, LLC fail to recommend a real estate broker within thirty (30) days of the Entry of this Order, then the Debtor may select a real estate broker of the Debtor's choosing., who shall also be authorized to discuss the status of listings and offers with the Sub-V Trustee, Philly Properties GP, LLC and Drexel

26

Page: 25

**Text Replaced**
[Old]: "Trustee"
[New]: "Trustee. Year 3 commences January 1, 2024."

**Text Deleted**
[Old]: "In addition, upon confirmation of the Plan, the Debtor and the Debtor's principal shall enter into a lease under which the Debtor's principal shall pay $5,000 per month to the Debtor as rent for use of 122 Danton Lane, Mullica Hill, New Jersey."

**Text Replaced**
[Old]: "Various Properties (other than 122 Danton Lane) The Debtor intends to sell the following properties, with all sales to be completed within six (6) months of the confirmation of the Plan."
[New]: "Real Properties The Debtor shall sell the following properties within twelve (12) months of confirmation:"

**Text Deleted**
[Old]: "d. 401 Cooper Landing Road, Suite C-4, Cherry Hill, NJ"

**Text Replaced**
[Old]: "the above properties within six (6) months of confirmation will not constitute a default under the Plan. 2.5.4 – Sale of 122 Danton Lane, Mullica Hill, NJ –Including Procedures and Conflict Resolution The Debtor shall sell 122 Danton Lane, Mullica Hill, NJ within one year of conformation of the Plan. The sale shall be for fair market value, though it need not necessarily be to an arms-length purchaser. Within four months of confirmation, the Debtor shall obtain a residential appraisal report of value for 122 Danton Lane. Within six months of confirmation, the Debtor shall cause 122 Danton Lane to be listed for"
[New]: "all of the properties shall constitute an event of default under the Plan. If the Debtor is unable to sell any of the properties as a result of a sale being economically infeasible or economically inadvisable, then the Debtor may file a motion to abandon such property under 11 U.S.C. §544. If abandonment is authorized, then the failure to sell such property shall not be an event of default. Within thirty (30) days of confirmation of the Modified Plan, Philly Properties GP, LLC and Drexel Properties GP, LLC may recommend the real estate broker(s) to be used in connection with the sales of the above-referenced properties. The Debtor shall engage the recommended real estate broker(s), and authorize the real estate broker to discuss the status of listings and offers with the Sub-V Trustee, Philly Properties GP, LLC, and Drexel Properties GP, LLC. The Debtor shall promptly and seek approval of their employment with this Court provided that i.) the real estate brokers are "disinterested" as to the Debtor; and ii.) the commission does not exceed"

**Text Replaced**
[Old]: "sale on the MLS and in connection therewith, shall engage a New Jersey licensed real estate agent to market and sell the property. The realtor"
[New]: "the customary 6% real estate commission. If Philly Properties GP, LLC and Drexel Properties GP, LLC fail to recommend a real estate broker within thirty (30) days of the Entry of this Order, then the Debtor may select a real estate broker of the Debtor's choosing, who shall also be authorized to discuss the status of listings and offers with the Sub-V Trustee, Philly Properties GP, LLC and Drexel"

**Text Replaced**
[Old]: "24"
[New]: "26"

Page: 26

Properties GP, LLC.  All real estate brokers' employment and compensation shall be subject to review and approval by the Court.

The initial listing price for the properties will be set jointly by the Debtor, on the one hand, and Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC on the other hand.  The pricing shall be guided by the realtor's recommended listing price.  In the event there is a disagreement between the Debtor and  Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC as to list price, the parties shall submit the dispute to Douglas Stanger, the Sub-V Trustee who shall act as a binding arbitrator of the dispute.  Mr. Stanger will be entitled to hourly compensation as an administrative expense for these services.  Price adjustments to the listing price will be made at the suggestion of the broker and by agreement of Debtor and Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC.  Disputes to be settled by Douglas Stanger as arbitrator.

Once a property is listed, the Debtor shall be obligated to accept any offer from a *bona fide* and qualified buyer so long as the offer is within 2% of the current list price.  The Broker shall be authorized to communicate all offers both to the Debtor, Debtor's counsel, the Sub-V Trustee, and to counsel for Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC.  However the Debtor shall ultimately be responsible for ensuring that all offers are presented to the Sub-V Trustee and counsel to Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC, regardless of whether the Debtor believes the offer is *bona fide*, or the buyer qualified.

**Upon Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.  The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.**

**2.6 Events of Default, Material Default, and Consequences Thereof**

In the event that the Debtor fails to:

i.)     Make all Chapter 11 Plan Payments to the Sub-V Trustee when due;
ii.)    Comply with the obligations set forth in Section 2.3.5, above; or
iii.)   Comply with any other material term or provision of the Modified Chapter 11 Plan

Then the Debtor shall be in Default of their Chapter 11 Plan Obligations.

Upon an event of Default, the Sub-V Trustee, the USTO, or any creditor may file a certification of default with respect to the Plan with the Court.  This certification must be served upon the Debtor, Debtor's Counsel, the United States Trustee's Office, the Sub-V

27

---

**Text Replaced**
[Old]: "shall also provide the Debtor with a broker's price opinion ('BPO'). The initial listing price for 122 Danton Lane shall be set jointly by the Debtor, on the one hand, and Philly Properties GP, LLC and Drexel Hill Properties GP, LLC."
[New]: "Properties GP, LLC. All real estate brokers' employment and compensation shall be subject to review and approval by the Court. The initial listing price for the properties will be set jointly by the Debtor, on the one hand, and Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC."

**Text Replaced**
[Old]: "BPO and Appraisal. In the event that"
[New]: "realtor's recommended listing price. In the event"

**Text Replaced**
[Old]: "Properties GP, LLC,"
[New]: "Properties, GP, LLC"

**Text Deleted**
"the"

**Text Replaced**
[Old]: "Properties"
[New]: "Properties,"

**Text Inserted**
"bona fide and"

**Text Inserted**
"a property is"

**Text Replaced**
[Old]: "price for 122 Danton Lane. The Debtor shall be obligated to share all offers received (irrespective of whether the Debtor believes the buyer is qualified or unqualified) with Philly Properties GP, LLC and Drexel Hill Properties GP, LLC. If, as part of the inspection and repair request process of the sale, the Debtor intends to reject a repair request and cancel the contract, the Debtor must first give notice of same to Philly Properties GP, LLC and Drexel Hill Properties GP, LLC and if Philly Properties GP, LLC and Drexel Hill Properties GP, LLC do not consent, then the dispute must be submitted to Doug Stanger for binding arbitration resolution before the Debtor cancels the contract. In all instances where Doug Stanger is acting as the arbitrator, the arbitration process shall be an informal, but binding proceeding, to be resolved via brief written submissions (not to exceed 5 pages) and in Doug Stanger's discretion, telephonic arguments. Any turnover of sales proceeds to the Sub-V Trustee shall be in addition to the periodic payments proposed by the Debtor and not shall not be credited towards the periodic payment obligation."
[New]: "price. The Broker shall be authorized to communicate all offers both to the Debtor, Debtor's counsel, the Sub-V Trustee, and to counsel for Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC. However the Debtor shall ultimately be responsible for ensuring that all offers are presented to the Sub-V Trustee and counsel to Philly Properties GP, LLC and Drexel Hill Properties, GP, LLC, regardless of whether the Debtor believes the offer is bona fide, or the buyer qualified."

**Text Deleted**
"25"

**Text Replaced**
[Old]: "Obtain an appraisal for 122 Danton Lane, Mullica Hill, NJ within four (4) months of confirmation of the plan; iii.) List the property for sale within six (6) months of confirmation of the Plan; iv.) Accept an offer from a qualified buyer that is within 2% of the list price for 122 Danton Lane, Mullica Hill, NJ; v.) Sell 122 Danton Lane, Mullica Hill, NJ within one year of confirmation of the plan; vi.) Make all post-petition mortgage payments to Mr. Cooper, the mortgage holder for 122 Danton Lane, Mullica Hill, New Jersey and Mr. Cooper obtains relief from the automatic stay; or vii.) The Debtor fails to maintain adequate insurance on 122 Danton Lane, Mullica Hill, New Jersey;"
[New]: "Comply with the obligations set forth in Section 2.3.5, above; or iii.) Comply with any other material term or provision of the Modified Chapter 11 Plan"

**Text Inserted**
"27"

Page: 27

Text Replaced
[Old]: "26"
[New]: "28"

Trustee, and all other creditors.

The Debtor shall have an opportunity to respond and either cure the default prior to the date of a hearing on such certification of default, or have an opportunity to cure if so permitted by the Court at the hearing on the certification of default.

In the event that the default is not cured by the Debtor prior to the hearing or following the hearing in accordance with the Court's order, then the Debtor shall be in Material Default of the Chapter 11 Plan.

Upon the occurrence of a Material Default of the Chapter 11 Plan, then the Sub-V Trustee or any creditor may certify to the Court that the Debtor has failed to meet these deadlines, on notice to the Debtor, Debtor's Counsel, the United States Trustee's Office, the Sub-V Trustee, and all other creditors.  If the Court finds that the Debtor is in Material Default and that no just cause exists for extending the Debtor's opportunity to cure the Material Default, then the Court **shall** order appropriate relief.

If applicable, the Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

**2.7.  Payments.**

The Sub-V Trustee shall act as disbursing agent and shall make all Plan payments to creditors under the Plan.

**2.8.        Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Darrell Choates, Sr. | CEO | **DEFERRED.**<br><br>Mr. Choates shall be entitled to salary of $60,000 per year. However payment of that salary shall be deferred until after the completion of the Chapter 11 Plan and Mr. Choates shall subordinate his right to this payment to the rights of all creditors. |

**2.9.   Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys,*

29



Page: 28

**Text Deleted**
"section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee"

**Annotation Deleted**

**Text Replaced**
[Old]: "If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan. If the Plan is confirmed under"
[New]: "The Sub-V Trustee shall act as disbursing agent and"

**Text Deleted**
"Mr. Choates will also be entering into a residential lease with the Debtor for $5,000/month for use of 122 Danton Lane, Mullica Hill, NJ upon confirmation of the Plan."

**Text Replaced**
[Old]: "27"
[New]: "29"

*And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: [List the following general consequences as a minimum: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on Creditors of any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation.]

### 2.10. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in **Exhibit D.**

### ARTICLE 3: FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **EXHIBIT D** (referenced in § 2.9, above).

The final Plan payment is expected to be paid on **OR BEFORE** 60 months after confirmation of the original Chapter 11 Plan.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

### ARTICLE 4: LIQUIDATION ANALYSIS

30

Page: 29

Text Deleted
"The Debtor does not project that it will need any cash on hand on the Effective Date of the Plan to play all the Claims and expenses that are entitled to be paid on that date."

Text Replaced
[Old]: "confirmation."
[New]: "confirmation of the original Chapter 11 Plan."

Text Replaced
[Old]: "28"
[New]: "30"

Page: 30

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  As unsecured creditors will receive a 100% distribution, this test is met.

**ARTICLE 5: DISCHARGE**

**5.1.   Discharge.**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**ARTICLE 6**
**GENERAL PROVISIONS**

**6.1.     Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation  of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided

31

Text Replaced
[Old]: "A liquidation analysis is attached hereto as EXHIBIT E."
[New]: "As unsecured creditors will receive a 100% distribution, this test is met."

Text Replaced
[Old]: "29"
[New]: "31"

in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.   Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear  and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and  (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.   Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.   Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7.    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

Page: 32

Text Replaced
[Old]: "31"
[New]: "33"

**ARTICLE 7: ATTACHMENTS**

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ X ]   Debtor's Assets at Fair Market Value, annexed as Exhibit A.

[ X ]   Debtor's Liabilities, annexed as Exhibit __B__.\

[ X ]   Proposed New Lease between Debtor and Principal of Debtor

[ X ]   Financial forecast for the Debtor, annexed as Exhibit ___D

[ X ]   Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit _C_.

[ X ]   Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit _C_.

[ X ]   Liquidation Analysis, annexed as Exhibit  E  .

Text Replaced
[Old]: "33"
[New]: "35"

## ARTICLE 8: FREQUENTLY ASKED QUESTIONS

**What Is Choates G. Contracting, LLC Attempting to Do in Chapter 11?**
Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the

35

Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?**

Section 2, Paragraphs 2.1 and 2.2 identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**   The Plan is being distributed to all claim holders for their review, consideration and approval.  The deadline by which ballots must be returned is _____.    Ballots should be mailed to the following address:

McDowell Law, PC
Attn: Daniel Reinganum / Choates Balloting
46 W. Main Street
Maple Shade, NJ 08052

**How Do I Determine When and How Much I Will Be Paid?**  In Section/Paragraph 2.5, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

Page: 35

Text Replaced
[Old]: "34"
[New]: "36"

## ARTICLE 9: DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Choates G. Contracting, LLC is the Debtor-in-Possession.

**9.15** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.** **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.** **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

38

Page: 37

Text Replaced
[Old]: "36"
[New]: "38"

**9.19.    Confirmation Hearing**: The hearing to be held on _____, 20__ to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**: April 15, 2021, the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.  Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.  Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.  Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.  Trustee**:  Douglas Stanger, Esq. the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.  Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

BY:/s/ Daniel L. Reinganum
Daniel L. Reinganum
McDowell Law, PC
46 W. Main Street
Maple Shade, NJ 08052

40

Page: 39

Text Replaced
[Old]: "38"
[New]: "40"